AMERICAN COLONIAL INSURANCE CO. v. J. W. MABRY

Opinion Delivered October 7, 1968

*Moses, McClellan, Arnold, Owen & McDermott* for appellant. By *Wayne M. Owen.*

*Hall & Tucker* and *John F. Lovell, Jr.* for appellee.

CARLETON HARRIS, Chief Justice.    On January 17, 1967, J. W. Mabry purchased a 1967 Mustang from Rebsamen Motor Company, agreeing to pay Rebsamen the sum of $3,060.00 in equal monthly installments beginning on March 1. The contract was assigned to Worthen Bank and Trust Company in the usual course of business.   Mabry defaulted in his payments, and on April 22, 1967, the bank filed a suit to replevin the

above described automobile, which had been wrecked, and prayed that it have judgment against Mabry in the amount of $3,060.00, less the sales price of the replevined car, and less all other credits due Mabry. Mabry answered, admitting that he had executed the conditional sales contract, and that he had agreed to pay the amount set out above in equal monthly installments, continuing until the principal sum was discharged. Other allegations were denied. A third party complaint was filed against American Colonial Insurance Company, appellant herein, alleging that he had insurance coverage with this company. It appears from this pleading, and the answer of American Colonial, that the coverage was originally on a 1963 model Ford automobile, which Mabry had previously purchased from Capital Motors. the policy[1] contains a provision that if the insured acquires ownership of another automobile, and notifies the company within 30 days following delivery to him, the insurance afforded by this policy will apply to the new automobile as of the delivery date. Apparently the 1963 Ford was traded in on the 1967 Mustang, and the Mustang was wrecked on February 6, 1967. In his pleading, Mabry asserted that he had turned his policy over to Jim Hodges, an agent of Rebsamen Motor Company at the time of the sale, since Hodges would not permit him to drive the new car off the lot otherwise; that he had made demand upon the company for the value of the car, $3,060.00, but that appellant had refused to make payment. Judgment was sought in that amount, plus 12% penalty, reasonable attorney's fee and costs.

The company admitted that Hodges was an employee of Rebsamen, acting within the scope of his em-

[1]Actually, the instrument was an "automobile certificate of insurance," issued under a master policy, the certificate providing that an insured is covered under the master policy for the term specified (two years in this instance), but that the company shall not be liable for any amount except the actual cash value of the property insured.

ployment at the time of the purchase of the Mustang by Mabry. It was further asserted that at the request of Mabry the appellant cancelled a policy of insurance that it had issued to him covering the 1963 Ford purchased from Capital Motors, said policy being cancelled on January 28, 1967; further, the unearned premium of $128.75 was returned to Mabry at the time of the cancellation, and American Colonial therefore denied any liability. On trial, the court held that the company, having admitted the original issuance of the policy, had the burden of proof to show that said policy was not in effect on the date of the wreck. The court told the jury that, if the policy had been cancelled, there would be no liability on the part of the company. It was then stated:

> "* * * The sole question the jury has to decide today is whether or not the policy which admittedly existed was cancelled within that thirty day period, or before the accident occurred that caused the damage to the automobile. That is the sole question for you to decide."

Counsel did not desire to make an opening statement to the jury, and the attorney for the company stated:

> "As I say, in order to discharge that burden of proof, American Colonial at this time introduces the original policy that was issued to Mr. Mabry, which is the original of the copy in the file."

Counsel for Mabry objected to the introduction, because of marks appearing on the policy, which were not on it at the time of its issuance, stating that the notation on the policy was in the nature of a self-serving declaration, and that whether the policy was cancelled was the matter presented for determination. In the right hand corner of the face of the policy there appears a stamp mark:

CANCELLED

Date  . ____ .. ... _ ___.  . ___

How ___ .  _____ _____ _____

Ret. Prem. ____ .. _ ... _____ __

For "Date," there has been inserted with a pen, "1-28-67." For "How," there has been inserted with pen, "SR." For "Ret. Prem.," "$128.75." The attorney for the company stated, "With the introduction of that instrument, American Colonial Insurance Company rests." Counsel for Mabry then stated, "If the court please, we move for directed verdict at this point." Counsel for the appellant responded, "Your Honor, please, we move for directed verdict at this point." a directed verdict." The court then directed the jury to find the verdict in favor of appellee, stating, "I am going to direct the jury to find the verdict in favor of the cross-complaint. When each side moves for a directed verdict then it becomes my responsibility to decide the case. In the absence of proof, I am finding in favor of the cross-complainant against the insurance company." From the judgment so entered, appellant brings this appeal.

For reversal, it is asserted that the court erred in failing to direct a verdict for appellant, and also that the court erred in directing a verdict for Mabry.

Of course, it is well settled that when each litigant asks for an instructed verdict, and no other instructions are requested by either side, they, in effect, agree that the issue may be decided by the court. *National Garages, Inc.* v. *Barry*, 217 Ark. 593, 232 S.W. 2d 655.

We agree with the trial court that the issuance of the policy not being disputed, the burden was on appellant to show that the policy was no longer in force—and that the cancellation was in accordance with the provisions of the insurance contract. The introduction of

the policy did reflect that the company had issued same on May 28, 1966, but we think that is the only fact established by the introduction of this instrument. The policy provides that the insurance may be cancelled by a surrender of the purchaser's copy of the individual policy, and also provides that the company may cancel any individual policy by mailing a written notice setting out when the cancellation becomes effective, such period to be not less than five days before the cancellation is to take effect. In each instance, it is provided that the unearned premium shall be returned to the holder of the policy or certificate.

In the present instance, there is insufficient evidence to show the policy was cancelled; the reason given under "How" is "SR," which may or may not mean "Surrendered." If that is the meaning of this notation in ink, this in itself does not establish such a fact. Cancellation could not properly be established without testimony (or a stipulation) showing that Mabry had surrendered the policy, and that same had been cancelled by a proper officer of the company. The stamp does not show how the company received the policy (mail or personal delivery), or who turned it over to American Colonial[2]. These facts were essential to appellant's case. Interrogatories propounded by appellee, and answers given by appellant appear in the transcript which shed light on these questions, but the interrogatories were never offered into evidence; nor could they be offered by appellant, since it was the party making answer. The answers to interrogatories are inadmissible if offered on behalf of the party making answer, as self-serving declarations. *Callaway* v. *Perdue,* 238 Ark. 652, 385 S.W. 2d 4.

Accordingly, the only evidence in the record is the certificate of insurance which reflects that it was issued

[2]It will be remembered that Mabry's allegation in his pleading was that the policy had been turned over by him to an employee of Rebsamen Motor Company at the time he purchased the Mustang.

to Mabry on May 28, 1966, to remain effective for a period of two years. The evidence was insufficient to show that the insurance was properly cancelled under the provisions of the policy.

Affirmed.