**John W. COUCH and Rita Couch, husband and wife, Plaintiffs,**

**v.**

**FARMERS INSURANCE GROUP et al., Defendants.**

**No. F–72–C44.**

United States District Court,
W. D. Arkansas,
Fayetteville Division.

April 26, 1974.

Estes, Storey & Estes, Fayetteville, Ark., for plaintiffs.

Shaw & Ledbetter, Fort Smith, Ark., for defendants.

### OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court identical cross motions of the parties for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on the ground that there is no genuine issue of material fact and

that the movants are entitled to a judgment as a matter of law. In support of the motions all the movants rely upon the entire record and the depositions of Don Bacus taken February 5, 1973, and John W. Couch and Rita Couch taken February 21, 1973.

On July 12, 1971, a suit was commenced in the state court against Rita Couch growing out of the accident and seeking a recovery of $107,000 for alleged injuries and property damages.

On October 27, 1972, the plaintiffs filed their complaint for declaratory judgment against defendants, praying that this court declare and decree that the defendants "provided insurance coverage for the plaintiffs at the time of the automobile accident occurring on or about June 9, 1971, and presently have a duty to defend the suit filed in the Washington County Circuit Court against plaintiffs and declare and hold that the defendants, either jointly or severally, have the duty and responsibility to pay any judgment rendered against the plaintiffs in said suit."

In paragraphs 6 and 7 of plaintiffs' complaint against the defendants, they alleged that after defendants were notified of the accident that their agents investigated the facts and circumstances and filed a motion in the state court to quash service, and also filed an answer; that on September 9, 1971, subsequent to the filing of said motion and answer the defendants advised plaintiffs that they were withdrawing from the defense of the lawsuit in the state court, and further that they declined to pay any judgment rendered against plaintiffs in that court by reason of the accident. No further action has been taken in the state court, and the action is still pending.

On November 18, 1972, the defendants filed their answer specifically denying all allegations in the complaint filed against them and reserving the right to plead further.

On April 12, 1974, the attorney for plaintiffs by letter brief advised the court that the parties had agreed to submit the cause for determination on the pleadings and depositions of the parties and incorporated plaintiffs' brief in the letter. The letter brief of plaintiffs was submitted prior to the filing of the motion for summary judgment and supporting brief of defendants. Following the filing of the motion and brief in support thereof by defendants, the court advised the parties by letter on April 19, 1974, that if the attorney for plaintiffs desired to submit a brief in opposition to the motion, that he proceed to do so within one week from the date of the receipt of letter. Upon receipt of the letter, plaintiffs filed their motion and advised the court that they did not desire to submit a reply brief to the brief of defendants.

The pleadings and depositions show there is no genuine issue as to any material fact. The controversy is based upon the different construction of the applicable law.

Apparently the first automobile liability policy was issued by defendants to plaintiffs in July 1967. The premiums were payable every six months. The undisputed facts are that the plaintiffs had much difficulty in paying the premiums as required by the policies that were issued from time to time, and finally the defendants issued a Mid-Century Insurance Policy, No. 18 2986 5891, effective April 5, 1971, with an expiration date of October 5, 1971. The new policy was issued and mailed to plaintiffs on March 17, 1971, and indicates that the premium was due on the effective date, April 5, 1971. The premium was not paid, and on May 27, 1971, plaintiffs were advised that the policy was cancelled effective May 16, 1971. Also, on June 2, 1971, Mr. Bacus, agent of defendants, because of his acquaintance and friendship for plaintiffs, notified them that the policy had been cancelled effective May 16, 1971.

On June 9, 1971, the plaintiffs' vehicle driven by Mrs. Couch was involved in a highway accident. At 10:20 a. m. on June 9, 1971, one hour and 35 minutes after the accident, Mr. Couch called at

the office of the agent of defendants and paid the full premium then due on the policy, which as heretofore stated had been cancelled effective May 16, 1971. Neither Mr. Couch nor the agent of defendant knew that an accident had occurred until the afternoon of June 9, 1971. Upon receiving the information, Mr. Couch reported to the agent, Mr. Bacus, and asked him if the accident would be covered by the insurance policy, and Mr. Bacus advised that he did not think the insurance would cover the accident.

The first paragraph of the policy provides:

"If the insured pays the total premium when due, the Company stated in the Declarations agrees with the insured named in the Declarations made a part hereof, in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

\*   \*   \*   \*   \*   \*

"To pay all damages the insured becomes legally obligated to pay because of:

(A) bodily injury to any person, and/or (b) damage to property

arising out of the ownership, maintenance or use \* \* \* of the described automobile \* \* \*."

The policy also provides in pertinent part:

"This policy may be cancelled \* \* \* by the Company by mailing to the named insured at the address shown in this policy written notice stating when not less than 10 days thereafter such cancellation \* \* \* shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and if the entire policy is cancelled the effective date and hour of cancellation stated in the notice shall become the end of the policy period."

The fact sheet of the policy provides:

"The policy shall expire at 12 o'clock NOON Standard Time on the expiration date shown in Item 2 of the Declarations. The policy may be renewed for an additional policy term of six months each time the Company offers to renew by sending a bill for the required renewal premium and the insured pays said premium in advance of the respective renewal date. The policy is issued in reliance upon the statements in the Declarations."

■ The burden was upon the defendants to show that the cancellation was in accordance with the provisions of the insurance contract, American Colonial Ins. Co. v. Mabry (1968), 245 Ark. 288, 432 S.W.2d 15. The undisputed facts establish that the conditions required for cancellation were fully complied with. The formal notice to plaintiffs was all that was necessary to effectively cancel the policy. Mr. Couch admitted in his deposition that he had received some type of notice from defendants before the accident. Undoubtedly this was the notice of cancellation, but even if plaintiffs had not received notice, the cancellation was nevertheless effective.

The plaintiffs contend that it was the company's policy to renew and reinstate the insurance policy if applied for within a 60-day period, and that the first notice that plaintiffs had was by letter of May 27, 1971, that the policy was cancelled effective May 16, 1971. Therefore, plaintiffs contend that they had 60 days from the effective date of the cancellation to pay the premium and thus reinstate the policy. The difficulty with this contention is that there is no provision in the policy to this effect. The premium was due on its effective date, April 5, and the policy provides that upon the notice being sent of the failure to pay the premium, the entire policy is cancelled and "the effective date and hour of cancellation stated in the notice shall become the end of the policy period."

Liability under the policy, if any, accrued upon the happening of the acci-

dent to the plaintiffs' automobile. The plaintiffs knew the policy was not in force since May 16, 1971, the effective date of the cancellation. They sought to have it reinstated but did not tender the overdue premium until at least one hour and 35 minutes after the accident had occurred.

■ In Capital Fire Ins. Co. v. Shearwood (1908), 87 Ark. 326, 112 S. W. 878, the court held that where the insurance company had no knowledge of the forfeiture until after the loss occurred, it was not precluded from setting up a forfeiture in defense of suit on the policy. Where the insurance company has done no affirmative act recognizing the validity of the policy, notwithstanding the forfeiture, it has done nothing to deceive or increase the burdens of the insured, and the doctrine of waiver and estoppel cannot be invoked against the insurance company.

In Patterson v. Equitable Life Assur. Society (1914), 112 Ark. 171, 165 S.W. 454, the applicant, as beneficiary of T. P. Patterson, sued the appellee, defendant, on a policy of life insurance. The plaintiff alleged the death of the insured and demanded the face amount of the policy. The insured died on January 8, 1912. The appellee had no knowledge or information of his death until on or about October 10, 1912. Letters were exchanged in an effort to surrender the policy for a paid-up term policy. The beneficiary, plaintiff, contended that the insurance company had waived the provisions of the policy and that the policy was in full force and effect at the time of the insured's death for the full amount thereof. Beginning at page 177 of 112 Ark., at page 456 of 165 S.W. the court said:

" * * * the death of Patterson fixed the rights of the parties to the insurance contract as they existed at that time, and any letter written by the appellee after Patterson's death, and without knowledge thereof, and addressed to him as though he were living, could not be considered as a waiver of appellee's rights under the insurance contract as they existed at

the time of Patterson's death. At the time of the death of the insured, by reason of the nonpayment of the premium, the policy had lapsed and he had been advised thereof, and only certain rights which involved affirmative action on his part remained to him, and of which he had not availed himself, and his death left only the right, by the very terms of the contract, to a paid-up policy of insurance for $900. The appellee, at the time of writing the letters, being ignorant of the death of Patterson, could not waive its rights fixed by his death, even if the letters would have otherwise constituted a waiver. There can be no such thing as a waiver of rights without knowledge of the facts upon which such rights are based. As was said by us in Planters' Mutual Ins. Co. v. Loyd, 67 Ark. 584, 588, 56 S.W. 45, 77 Am.St.Rep. 136: 'When the insurer, with knowledge of any act on the part of the assured which works a forfeiture, enters into negotiations with him which recognizes the continued validity of the policy, * * * the forfeiture is waived. But, if, at the time of such negotiations, the insurer is ignorant of the forfeiture and of the misstatement which causes it, no waiver can be implied.' Capital Fire Ins. Co. v. Shearwood, 87 Ark. 326, 112 S.W. 878."

There is no evidence that the defendants did anything to lead the plaintiffs to believe that the policy was in force after May 16, 1971. Likewise, there is no evidence that after the happening of the accident that defendants waived the effectiveness of the cancellation.

■ The mere payment of the premium by Mr. Couch without knowledge that an accident had happened and the acceptance of said premium by the agent without such knowledge did not have the effect of reinstating the policy.

The plaintiffs also contend that the defendants, by filing a motion to quash service of summons and the answer of defendants in the state court suit, reinstated the policy.

There is an annotation in 167 A.L.R. beginning at page 243 on the liability of insurer based upon its acts of withdrawal after assumption of defense. On page 245 the following appears:

"b. Untimeliness of withdrawal as basis for estoppel

"According to the general rule which has the support of all the cases in point, an insurer who withdraws from the defense of an action is estopped to deny liability under the policy if its conduct results in prejudice to the insured; but it is not estopped to do so if its action does not result in any prejudice to the insured."

 An insurer, has the right, if its conduct does not prejudice the insured, to withdraw from the defense upon determining that there was no coverage under the policy. Upper Columbia River Touring Co. v. Maryland Cas. Co. (9 Cir. 1963), 313 F.2d 702, 706; Travelers Indemnity Co. v. State Farm Mutual Auto. Ins. Co. (9 Cir. 1964), 330 F.2d 250, 259–261; Minnesota Mutual Fire & Casualty Co. v. Benson (1972), 292 Minn. 314, 195 N.W.2d 446; see, generally, Long, The Law of Liability Insurance, § 5.05 B.

The case of Ft. Smith Tobacco & Candy Co. v. American Guaranty & Liability Ins. Co. (W.D.Ark.1962), 208 F. Supp. 244, was a suit by plaintiff to recover judgment against the defendant bonding company under the provisions of a comprehensive dishonesty, disappearance and destruction policy for loss of money and other property sustained through the alleged fraudulent or dishonest acts of an employee of plaintiff. The plaintiff contended that because of the delay of the defendant in advising plaintiff that it was not liable for losses that occurred while the prior policy was in force and effect and which were discovered within one year subsequent to the date of the termination of the prior policy, the plaintiff did not notify the insurer that a portion of the losses occurred while its policy was in force. The plaintiff therefore argued that the defendant was estopped to contend that it was not liable for any shortages that

may have occurred while the prior policy was in force and effect. In discussing this contention the court thoroughly considered the question of estoppel by an insurance company. In the consideration of the question the court had occasion to consider the case of Capital Fire Ins. Co., supra. In order for the doctrine of estoppel to apply, there must be some evidence to establish that a party has been injured by the action or nonaction of the party claimed to be estopped. As heretofore stated, there is no genuine issue as to any material fact. Mr. and Mrs. Couch were very frank in their testimony. They have had difficulty for years in paying the premiums on their liability insurance, and the defendant, Farmers Insurance Group, had been lenient and cooperative in allowing them to reinstate policies, but here the policy was legally cancelled before payment, and the defendants are not liable.

For the reasons hereinbefore stated, judgment should be entered granting the motion of defendants for summary judgment and dismissing the complaint of the plaintiffs, and denying and overruling the motion of plaintiffs for summary judgment, with each party to pays its own costs.