# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1601

_____

| | | |
|---|---|---|
| Kendall Dodson; Dennis D. Dodson; | * | |
| Jerry Dodson; Loyal S. Dodson, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| J.C. Penney Company, Inc.; | * | District of Arkansas. |
| | * | |
| Defendant, | * | |
| | * | |
| J.C. Penney Life Insurance Company, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: March 3, 2003

Filed: July 15, 2003

_____

Before BYE, BEAM and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Kendall, Dennis, Jerry and Loyal Dodson (Dodson children) appeal the district court's grant of summary judgment in favor of J.C. Penney Life Insurance Company (J.C. Penney Life) dismissing their claim for life insurance proceeds following the deaths of their parents, J.B. and Viola Dodson (Dodsons). On November 6, 2002, we

filed an opinion reversing the district court's grant of summary judgment. On January 28, 2003, the panel granted rehearing, thus vacating the opinion and judgment previously filed. After receiving additional filings from the parties and carefully considering the additional arguments, we reverse and remand.

I

In February 1998, the Dodsons purchased an accidental death and dismemberment insurance policy from J.C. Penney Life which provided a $100,000 death benefit in the event of J.B.'s death, and a $50,000 benefit in the event of Viola's death. The monthly premium was billed to the Dodsons' J.C. Penney Company Inc. charge card. In June 1999, J.C. Penney Life solicited the Dodsons by mail offering to sell them additional coverage. The offer advised the Dodsons to return a form attached to the mailing by August 9, 1999, if they wanted the additional coverage.

On June 30, 1999, Mr. Dodson called J.C. Penney Life's offices in Oklahoma City and spoke with Camilla Frazier. Ms. Frazier has no independent recollection of the conversation with Mr. Dodson, but based upon contemporaneous entries made in her computer she testified Mr. Dodson called to cancel the death and dismemberment policy. Ms. Frazier's computer notes indicate Mr. Dodson had concerns about the policy and wanted it cancelled. She attempted to dissuade him but he said they had other coverage and did not need the policy. Ms. Frazier told Mr. Dodson the coverage would be in addition to any other similar coverage but he insisted on cancellation. Finally, the computer notes reflect Mr. Dodson was given the option of cancelling the policy immediately and receiving a rebate of the unused premium or allowing the policy to lapse as of the date the next premium was due (August 13, 1999). Mr. Dodson chose to allow the policy to lapse.

On September 11, 1999, the Dodsons were killed in an automobile accident. The Dodson children found J.C. Penney Life's offer of additional life insurance

among their parents' personal effects. The Dodson children contacted J.C. Penney Life and made a claim for the policy proceeds but were told the policy had been cancelled effective August 13, 1999.

The Dodson children brought suit against J.C. Penney Life seeking to collect on the policy. J.C. Penney Life sought summary judgment arguing the undisputed facts showed the policy had been cancelled by the Dodsons effective August 13, 1999. The Dodson children argued there was a genuine question of material fact as to whether the Dodsons called to cancel the policy on June 30, 1999, or whether they simply called to decline the offer of additional coverage and the policy was mistakenly cancelled. They also argued J.C. Penney Life should be estopped from claiming the policy had been cancelled because it failed to follow a company policy requiring written notice confirming cancellation be sent within 7 days of cancellation. Finally, the Dodson children argued Arkansas's statutory 31-day grace period extended coverage from August 13, 1999, the date the policy lapsed, until September 13, 1999, two days beyond the date on which the Dodsons were killed. The district court held there was no issue of material fact concerning cancellation of the policy; estoppel did not apply because the Dodson children could not show detrimental reliance; and the grace period did not apply because the policy had been cancelled by the Dodsons. Because the district court mistakenly concluded the 31-day grace period did not apply, we reverse.

II

We review a grant of summary judgment de novo, applying the same standard as the district court. Jaurequi v. Carter Mfg. Co. Inc., 173 F.3d 1076, 1085 (8th Cir. 1999). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be awarded to a party if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The Dodson children contend the district court erroneously concluded there was no genuine issue of material fact as to whether the Dodsons' insurance policy had been cancelled. They further argue J.C. Penney Life should be estopped from relying upon the alleged cancellation because it failed to send out written notice of cancellation as required by company policy. We agree the district court properly rejected these arguments. We disagree, however, with the district court's application of Arkansas's statute imposing a 31-day grace period on group life insurance policies.

Ark. Code Ann. § 23-83-110 provides:

(a) The group policy, excluding an annuity policy, shall contain a provision that the policyholder is entitled to a grace period of thirty-one (31) days for the payment of any premium due except the first, during which grace period the death benefit coverage shall continue in force *unless* the policyholder shall have given the insurer *written notice* of discontinuance in advance of the date of discontinuance and in accordance with the terms of the policy. (Emphasis added).

The district court concluded the statute applied to policies for which a premium was due, and, because Mr. Dodson cancelled the policy orally, no premium was due. The district court, however, failed to consider the statutory language requiring written notice from the Dodsons in advance of discontinuance.

The district court correctly noted the burden was on J.C. Penney Life to show the policy was no longer in effect and cancellation was done in accordance with the terms of the insurance policy.[1] Am. Colonial Ins. Co. v. Mabry, 432 S.W.2d 15, 18 (Ark. 1968). The district court found Mr. Dodson's intent to cancel was unequivocal

---

[1]The policy provides "[y]ou may cancel your coverage upon notice to us. Notice is deemed to be due or given when made in writing, communicated verbally by telephone or in person, or by any other means acceptable to us." App. 43 (policy renewal conditions).

and absolute, <u>Am. States Ins. Co. v. S. Guar. Ins. Co.</u>, 919 S.W.2d 221, 223 (Ark. Ct. App. 1996), and, inasmuch as the insurance contract had been cancelled as of August 13, 1999, the grace period did not apply. This case is not, however, governed solely by the language of the insurance policy.

Insurance carriers transacting business in Arkansas are required to include within their insurance contracts "such standard or uniform provisions as are required by the applicable provisions of this code pertaining to contracts of particular kinds of insurance." Ark. Code Ann. § 23-79-111. Among the provisions to be included in group life insurance policies is the grace period required by § 23-83-110. Ark. Code Ann. § 23-83-109. Section 23-83-110 unambiguously requires life insurance carriers to provide a 31-day grace period. Equally unambiguous is its message to life insurance carriers that the grace period applies "unless the policyholder shall have given the insurer written notice of discontinuance in advance of the date of discontinuance and in accordance with the terms of the policy." <u>Id.</u> Thus, in order for J.C. Penney Life to avoid the grace period, Mr. Dodson's cancellation had to meet the statutory requirements *and* be done in accordance with the terms of the policy. We do not doubt Mr. Dodson's oral cancellation was unequivocal and fell within the terms of the policy. We find no evidence, however, that written notice of discontinuance in advance of August 13, 1999, was provided. Thus, Mr. Dodson's oral cancellation of the policy, while perhaps effective for some other purpose, did not relieve J.C. Penney Life of its statutory duty to provide a 31-day grace period once the policy lapsed.

III

In its brief on rehearing, J.C. Penney Life argues § 23-83-110 does not apply to this policy because the statute encompasses only group life insurance policies and this is a group accident and health policy. Alternatively, J.C. Penney Life argues § 23-83-110's written notice requirement applies only to J.C. Penney Company Inc.

as the policyholder; not the Dodsons who were merely certificate of insurance holders.

J.C. Penney Life's argument presupposes the policy it sold the Dodsons must be construed either as a group life policy *or* a group accident and health policy. In Arkansas, however, different classes of insurance coverage may overlap.

Ark. Code Ann. § 23-62-101 provides:

> It is intended that certain insurance coverages may come within the definitions of two (2) or more kinds of insurance as defined in this subchapter . . ., and the inclusion of the coverage within one (1) definition shall not exclude it as to any other kind of insurance within the definition of which that coverage is reasonably includable.

Ark. Code Ann. § 23-62-102 defines life insurance as:

> (a) As used in the Arkansas Insurance Code, unless the context otherwise requires, "life insurance" is insurance on human lives.

> (b) The transaction of life insurance includes also the granting of endowment benefits, benefits for expenses incurred in connection with death, additional benefits in event of death or dismemberment by accident or accidental means, additional benefits in event of the insured's disability, and optional modes of settlement of proceeds of life insurance.

> (c) Transaction of life insurance does not include workers' compensation, as defined in § 23-62-105(a)(3).

Ark. Code Ann. § 23-62-103 defines accident and health insurance as:

(a) As used in the Arkansas Insurance code, unless the context otherwise requires, "accident and health insurance" is insurance of human beings against bodily injury, disablement, or death by accident or accidental means or the expense thereof or against loss of income due to disablement or expense resulting from sickness and every insurance appertaining thereto.

(b) Transaction of accident and health insurance does not include workers' compensation, as defined in § 23-63-105(a)(3).

According to J.C. Penney Life, life insurance insures against the loss of human lives, while accident and health insurance insures against accidents. Therefore, accident and health insurance cannot be included within the definition of life insurance. J.C. Penney further contends § 23-62-102 impliedly excludes policies covering accidental death from the definition of life insurance except to the extent those policies provide double indemnity or other additional benefits. These arguments are unconvincing.

Section 23-62-102 defines life insurance as "insurance on human lives." We see no reason to exclude from that definition a human life lost due to an accident or by accidental means. While accidental death benefits are only triggered in the event of death by accident, the thing being insured is a human life - not an accident. In other words, a human life lost to an accident or by accidental means is no less a human life than one lost by any other means. Section 23-62-101 anticipates an overlap between certain classes of insurance, and policies insuring against the loss of human life due to accident are contained within the larger class of life insurance policies insuring against the loss of human life due to all causes. Accordingly, we reject J.C. Penney Life's argument that policies insuring against the accidental loss of life are not life insurance policies.

J.C. Penney Life next contends the Arkansas legislature intended to exclude most accidental death policies from the definition of life insurance by limiting "life

insurance" to policies that provide "additional benefits in event of death or dismemberment by accident or accidental means." Ark. Code Ann. § 23-62-102(b). Such a reading, however, ignores the plain language of the statute. Section 23-62-102(a) broadly defines 'life insurance' as "insurance on human lives." As we have already concluded, insurance that pays a benefit for the loss of human life caused by accidental means is included within the statute's definition of life insurance. Contrary to J.C. Penney Life's argument, § 23-62-102(b) does not limit the broad language found in subpart a, but rather operates to further expand the definition to "include[] *also* . . . additional benefits in event of death or dismemberment by accident or accidental means." Ark. Code Ann. § 23-62-102(a) (Emphasis added).

Furthermore, we agree with the Montana Supreme Court when it concluded in a case involving a statutory scheme nearly identical to Arkansas's, that had the legislature intended to exclude accident and health policies from the definition of life insurance, it would have done so explicitly as it did with workers' compensation insurance. See Golt v. AETNA Life Ins. Co., 2 P.3d 841, 846-47 (Mont. 2000) (answering certified questions from the Ninth Circuit Court of Appeals submitted in Golt v. AETNA Life Ins. Co., 186 F.3d 1184, 1185 (9th Cir. 1999)).

Finally, J.C. Penney Life argues that even assuming the policy it sold the Dodsons is a group life insurance policy, § 23-83-110's written notice requirement applies only to J.C. Penney Company Inc. as the policyholder, and not the Dodsons who were certificate of insurance holders.

Section 23-83-110 provides:

(a) The group policy, excluding an annuity policy, shall contain a provision that the *policyholder* is entitled to a grace period of thirty-one (31) days for the payment of any premium due except the first, during which grace period the death benefit coverage shall continue in force unless the *policyholder* shall have given the insurer written notice of

discontinuance in advance of the date of discontinuance and in accordance with the terms of the policy. (Emphasis added).

J.C. Penney Life contends the statute may have required written notice from J.C. Penney Company Inc., in the event it decided to cancel the policy, but it imposed no similar requirement with respect to the Dodsons. This argument is equally unavailing.

Section 23-83-110's grace period is mandatory and must be included in life insurance contracts sold in Arkansas. Ark. Code Ann. § 23-79-111. Absent written notice from the policyholder to the insurer in advance of cancellation, the grace period applies. The insurance policy in this case denotes J.C. Penney Company Inc. as the policyholder, but the Dodsons were the only parties with the right to cancel the insurance. App. 43 ("The insured may keep his or her Certificate in force for as long as he or she lives."). Thus, it necessarily follows the Dodsons were the ones from whom J.C. Penney Life needed to receive written notice in order to avoid the grace period. Any other conclusion would render § 23-83-110's mandatory grace period nugatory.

The judgment of the district court inasmuch as it relates to the application of § 23-83-110 is reversed and the case is remanded for further proceedings consistent with this opinion.

BEAM, Circuit Judge, dissenting.

I believe the court misreads Arkansas statutes applicable to this case. Accordingly, on the basis of its well-reasoned opinion, I would affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.