**Margaret Carney CARTER, Plaintiff-Appellant,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, a Corporation, Defendant-Respondent.**

**No. 33568.**

St. Louis Court of Appeals, Missouri.

Feb. 24, 1970.

Wilburn A. Duncan, Anthony F. Vaiana, St. Louis, Dalton, Treasure & Bullard, Kennett, for plaintiff-appellant.

Murphy & Kortenhof, Joseph M. Kortenhof, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

This action was brought by plaintiff as beneficiary under a group insurance policy issued by defendant to recover an accidental death benefit in the amount of $7,000, interest thereon, damages for alleged vexatious refusal to pay, and a reasonable attorney's fee. A jury was waived, and trial to the court resulted in a judgment in favor of defendant, from which the plaintiff prosecutes this appeal. We affirm.

The material facts are without substantial dispute. Plaintiff's deceased husband, Donald L. Carter, was employed by the

McDonnell Aircraft Corporation on October 11, 1966, as a unit analyst, cost reduction. Prior thereto the defendant had issued to McDonnell three separate group policies covering McDonnell's employees, each of which provided for different forms of insurance. Policy G–5546 provided for life insurance coverage; policy ADD–1357 provided benefits for accidental death or dismemberment; and policy GH–1244 provided benefits for certain hospital and surgical expenses. Only two copies of each contract existed, one of which was given to McDonnell and the other retained by the defendant. Each employee of McDonnell was required to participate in the group insurance plan, and to contribute each month, by a deduction from his pay check, a part of the total amount which the defendant billed McDonnell for the cost of the three policies, the balance being paid by McDonnell. On the date Carter was employed he was given a single certificate of insurance, to which further reference will be made, in which plaintiff was named as the beneficiary. It was agreed that the deceased had never examined the group policies.

Carter resigned from his employment at McDonnell on April 5, 1968, and did not work there after that date. On April 13, 1968, he was involved in an automobile accident and died as a result of crushing injuries to his chest. Defendant admitted that Carter suffered an accidental death within the meaning of the group policy providing that coverage.

Each of the group insurance policies contained a provision that the insurance under that policy terminated on the date of termination of the employee's employment with the employer, McDonnell. However, the group life insurance policy contained a conversion clause, under which an employee whose employment had terminated had the right, upon his application to the defendant within 31 days after such termination and the payment of the applicable premium, to obtain " * * * a policy of life insurance, without disability or other supplementary benefits, in any one of the forms then customarily issued by the Company, except Term Insurance, in an amount not to exceed the amount of life insurance which ceases because of such termination. * * *" And the last paragraph of the termination clause of the group life insurance policy reads that if the employee is entitled by the terms of the policy to convert all or part of his insurance to an individual policy but dies during the period allowed for its conversion, the amount of insurance which might have been converted would be paid as a claim under the policy, whether or not application for conversion had been made or the first premium therefor had been paid. Based on his earnings, Carter was insured for life insurance in the amount of $7,000. Inasmuch as Carter had died within the thirty-one day conversion period, upon receipt of notice and proof of claim defendant promptly paid the sum of $7,000 to plaintiff as the amount due under the life insurance coverage.

Plaintiff also claimed that she was entitled to $7,000 as an accidental death benefit, and defendant conceded that the plaintiff would have been entitled thereto had Carter died prior to April 5, 1968, the day he resigned. As stated, the group accidental death and dismemberment policy provided, as did the group life insurance policy, that the insurance on any employee insured under that policy terminated automatically on the date of termination of the employee's employment. However, unlike the group life insurance policy, the group accidental death policy did not contain any conversion clause. Defendant took the position that under the terms of the group accidental death policy such coverage had ceased on April 5, 1968, the date Carter resigned from the defendant, and therefore refused to pay. We observe, parenthetically, that the third group insurance policy, that for medical care coverage, is not here involved.

Both the group life insurance policy and the group accidental death policy contained

a paragraph which stated that the defendant would issue to each employee insured under the policy an individual certificate setting forth a statement of the insurance protection to which he was entitled, to whom payable, and such limitations and conditions in the master policy as pertain to the individual employee. However, rather than three individual certificates, what the defendant in fact issued to Carter was one certificate evidencing his coverage under all three of the group policies; and what was, and was not, stated in the certificate of insurance forms the basis of plaintiff's action.

As to what was stated in the certificate plaintiff points to three paragraphs, the first of which appears on page four, under the heading "Conversion Privilege," and reads:

"(1) If the insurance, or any portion of it, on any Employee covered under this policy ceases because of termination of employnent for any reason whatsoever, or because of termination of membership in the class or classes of Employees eligible for insurance under this policy, or because such insurance is terminated under the terms of the provision entitled 'Extended Insurance,' then such Employee shall be entitled to have issued to him by the Company, without evidence of insurability, upon his written application to the Company made within thirty-one days after such termination, and upon payment within the said period of thirty-one days of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, nearest birthday, a policy of life insurance, without disability or other supplementary benefits, in any one of the forms then customarily issued by the Company, except Term Insurance, in an amount not to exceed the amount of life insurance which ceases because of such termination. Any such individual policy so applied for by any such Employee shall be effective the first day following the expiration of the conversion period."

The second paragraph likewise appears on page four of the certificate, under the heading "Death Benefit During Conversion Period," and states:

"If the Employee is entitled by the terms of the Policy to convert all or part of his insurance to an individual policy but dies during the period allowed for its conversion, the amount of insurance which might have been converted will be paid as a claim under the Policy, subject to the terms and conditions of the 'Payment of Death Claims' provision of the Policy, whether or not application for conversion has been made or the payment of the first premium therefor has been made."

The third paragraph appears on page five of the certificate, under the heading, "Accidental Death and Dismemberment Insurance," and reads:

"If, while insured, the Employee has directly and independently of all other causes suffered in the manner herein described any of the losses indicated in the following Schedule of Indemnities as a result of bodily injuries caused solely through external, violent and accidental means, the Company will pay the amount indicated opposite each loss in the following Schedule (see Schedule on page 1 hereof for amount of Principal Sum), provided such loss shall occur within ninety (90) days from the date of the accident:

Accidental Death . . . Principal Sum"

Tacitly, at least, plaintiff recognizes the force of numerous decisions that have held that a certificate of insurance which is issued to an individual employee is merely a statement to him that he is insured under the group policy, Nick v. Travelers Ins. Co., 238 Mo.App. 1181, 185 S.W.2d 326, aff. 354 Mo. 376, 189 S.W.2d 532; Crawford v. Metropolitan Life Ins. Co., Mo. App., 167 S.W.2d 915; that the rights of

an employee or his beneficiary are to be determined according to the provisions of the group policy, Longley v. Prudential Ins. Co. of America, Mo.App., 161 S.W.2d 27; Satz v. Prudential Ins. Co. of America, Mo.App., 225 S.W.2d 480; and that where the certificate of insurance shows on its face that it was issued subject to the provisions of the group policy, to which reference must be made for exact information and conditions under which recovery can be made, there can be no ambiguity between the certificate and the group policy, and the latter takes precedence over and governs the right of recovery. Adair v. General American Life Ins. Co., Mo.App., 124 S.W.2d 657. Plaintiff points out that in Adair, where plaintiff contended there was an ambiguity between the group policy and the certificate, and the court held there could be none because the group policy controlled, the court added (124 S.W.2d 660):

"* * * We are not called on here to pass on a situation where the certificate contains a positive provision so repugnant to and contradictory of the provisions of the group policy as to mislead plaintiff to his injury. No such provision here appears; and no estoppel based on such a provision is pleaded."

That observation can be of little comfort to the plaintiff here, however, for when her argument is analyzed it will be found that, like Adair, this also is not a case where the certificate contains a *positive* provision repugnant to and contradictory of any provision of the group accidental death policy. Nor, we may add, did plaintiff plead any estoppel based on such a provision.

In fact, the only part of the group policy of insurance which plaintiff touches upon in her argument is the provision in the group accidental death policy which provides that the defendant would issue to each employee insured under that policy an individual certificate setting forth a statement of the insurance protection to which he is entitled, to whom payable and such limitations and conditions in the master policy as pertain to the individual employee. With that requirement in mind, plaintiff argues, to quote from her brief, that "The accidental death provisions contained in the Certificate do not specify that such provisions shall be void during the conversion period, nor does the extension clause or the conversion clause specifically exclude accidental death benefits." Further, plaintiff asserts that what was stated in the certificate regarding the conversion clause, the extension clause, and the accidental death benefit clause was so ambiguous and misleading as would, to quote plaintiff, lead " * * * an individual not trained in the law * * *" to believe that according to the terms of the certificate an employee had the right to convert his accidental death insurance, as well as his life insurance, within thirty-one days following the employee's termination of his employment, during which period he was insured if he died.

Plaintiff has either overlooked or disregarded the composition and format of the certificate, as well as its terms. The certificate consists of twelve pages, and a fair examination of it clearly shows that it is divided into several sections. From the most casual reading of the certificate it is readily apparent that certain sections are general in nature and apply to all three types of insurance. For example, the first page is general, and begins with the statement that:

"General American Life
Insurance Company St. Louis

"Certifies that under and subject to the terms and conditions of the Group Policy or Policies enumerated below, issued to

"McDONNELL AIRCRAFT CORPORATION
(Hereinafter called the Employer)

"the Employee named on the last page hereof is insured for Life Insurance under Policy G–5546 (Reissued), Accidental Death and Dismemberment Insurance

under Policy ADD–1357 (Reissued), and Medical Care Insurance under Policy GH–1244 (Reissued), the applicable insurance coverage, benefits and amounts in accordance with the following schedule: * * *."

Another example of a section general in nature appears on page eleven of the certificate, under the title "Termination of Employee Insurance," the pertinent part of which states:

"The insurance on any Employee shall terminate automatically on the earliest of the following dates:

(a) The date of termination of the Employee's employment with the Employer, which shall be the date the Employee ceases active work for the Employer * * *."

It is equally obvious, from appropriate titles, that three other sections each apply, respectively, to only one type of insurance. Thus the section headed "Life Insurance" begins on page three, and at the end of that page there appears the words "(Continued on next page)." At the top of page four are the words, "Life Insurance—Continued." The section titled "Accidental Death and Dismemberment Insurance" begins at the top of page five, and the printed matter regarding that subject occupies only about half a page. Nevertheless, the third section, titled "Hospital Expense Insurance," does not begin on that page, but starts at the top of page six.

Both the conversion paragraph and the extension paragraph upon which plaintiff relies appear on page four, under, as we have stated, the heading "Life Insurance—Continued." One would not have to be trained in the law to realize that those paragraphs relate only to life insurance, particularly since the conversion paragraph provides that what an employee may obtain by such conversion is " * * * a policy of life insurance, without disability or other supplementary benefits, in any one of the forms then customarily issued by the Company, except Term Insurance, in an amount not to exceed the amount of life insurance which ceases because of such termination. * * *" And the extended coverage paragraph, which likewise appears on page four under the heading "Life Insurance—Continued," immediately after the conversion paragraph, likewise by its terms relates solely to life insurance, for it begins, "If the Employee is entitled by the terms of the Policy to convert all or part of his insurance * * *"; and as we have pointed out, the only provision for conversion in either the group policy or the certificate clearly relates to life insurance.

Our conclusion that the certificate must be considered as a whole, and that we should not create an ambiguity where none exists, is in accord with what was recently said in Dieckman v. Moran, Mo., 414 S.W.2d 320, 321, regarding the rules of construction of language in insurance policies:

"The rules of construction of language in insurance policies have been variously stated. 'In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, insofar as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614, et seq., 267 S.W. 379, 381, 382. However, as said in 14 R.C.L. § 103, p. 931, the rule "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists." Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, loc. cit. 101, 57 A.L.R. 615.' Central Surety & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S.W.2d 76, 78. See also Brugioni v. Maryland Casualty Company, Mo., 382 S.W.2d 707, 712[5,6]; 44 C.J.S. Insurance §§ 294–

297, pp. 1155–1196; 29 Am.Jur. Insurance, § 245, p. 627 et seq."

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.