Shirley Jean NORMAN and Ethel L. Freeman, Co-Administrators of the Estate of Curtis Carter, Jr., Appellants,

v.

AETNA LIFE AND CASUALTY COMPANY, Appellee.

No. 48564.

Court of Appeals of Oklahoma, Division No. 1.

March 9, 1976.

Rehearing Denied April 20, 1976.

Certiorari Denied June 7, 1976.

Released for Publication by Order of Court of Appeals June 10, 1976.

Bay, Hamilton, Renegar & Lees by Andrew L. Hamilton, Oklahoma City, for appellants.

Ross, Holtzendorff & Bond by James H. Ross, Oklahoma City, for appellee.

ROMANG, Judge:

Plaintiffs bring this appeal from a judgment sustaining a demurrer to their amended petition and dismissing their action with prejudice. They present two propositions for reversal, which read:

"PROPOSITION ONE: The Accidental Death Benefits payable under the policy of insurance were part and parcel of the 'Death Benefits' which were payable if death occurred within the thirty-one day conversion period.

"PROPOSITION TWO: A Conversion Provision contained in a group policy automatically extends the insurance coverage for the stated period, and if the insured dies during the period in which he is entitled to apply for a converted policy, recovery may be had."

This is a suit to recover accidental death benefit alleged to be due under the group insurance plan which covered the employees of Acme Brick Company. There were two policies of insurance. Policy GR–22 provided for life insurance coverage; and policy GR–23 provided benefits for accidental death, dismemberment, medical and hospital expenses. The life insurance policy contained a conversion clause whereby an employee upon termination of employment could have issued "an individual policy of life insurance without disability or other supplementary benefits, . . . ." The policy providing an accidental death benefit, contained a provision whereby all insurance under it terminated upon termination of employment.

The covered employees were not furnished copies of the insurance policies, but each was furnished a booklet which explained the group insurance coverage under both policies. The booklet contained the following paragraph:

"This booklet describes the principal features of the Group Insurance Plan. The complete terms of the Plan are set forth in the Group Insurance policies issued by the AEtna Life Insurance Company. In the event of any questions

regarding the terms of the plan or the proper payment of benefits, further information may be obtained from your employer or, if you prefer, inquiries may be directed to the Home Office of the AEtna Life Insurance Company in Hartford, Connecticut."

Page 6 of the booklet is headed "LIFE INSURANCE FOR EMPLOYEES" and it concludes with the following paragraph:

"When your employment terminates, or when you cease to be a member of the eligible classes, your Life Insurance will cease, except that if your death should occur within 31 days thereafter, the death benefit will be payable. By making application and paying the first premium to the AEtna Life Insurance Company within this 31 day period, you may convert your Group Life Insurance to an Individual Life Insurance policy on any regular Whole Life or Endowment Plan. This individual policy will be issued without medical examination at the Insurance Company's regular rates."

Page 7 of the booklet is headed "ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE FOR EMPLOYEES" and it concludes with the following sentence:

"The injury causing the loss must occur while insurance is in force."

Curtis Carter, Jr. was an employee of Acme Brick Company and he was insured under both group policies of insurance. However, Mr. Carter terminated his employment, and, in less than 31 days thereafter, he was killed in an automobile accident. The insurer, Aetna Life and Casualty Company, paid to the plaintiffs the sum of $7,000.00 in life insurance.

█ Plaintiffs brought this action claiming they are entitled to an additional $7,000.00 as accidental death benefit. Plaintiffs assert in their reply brief as follows:

" . . . The only reason these two policies are part of the record is to evidence the existence of the policies. The language on which the Appellants have relied on all along is contained in the booklet of insurance.

\* \* \* \* \* \*

"Based upon the provision of the booklet and the language therein, it is the position of the Appellants in this case that all death benefits payable under either policy of insurance should be construed as life insurance; and, therefore, would have a thirty-one day grace period.

\* \* \* \* \* \*

" . . . [A]ny intent of the insurance company to exclude coverage in the area of death benefits should have been set out specifically by the insurance company; and therefore, by not doing so in the booklet of insurance issued to the employee, the insurance company should be estopped to assert the separate master insurance policies issued to the employer in this case as controlling.

\* \* \* \* \* \*

" . . . Appellants submit to the Court that there is ambiguity existing in the booklet issued to the employee in that 'death benefits' can be construed by the ordinary layman to mean that, upon death of an employee under the circumstances in this case, the beneficiaries of the policy issued by the insurance company should be able to recover accidental death benefits as well as benefits under the life insurance policy."

In view of the different headings on pages 6 and 7 of the booklet, an employee would not have to be trained in law or be above average in intelligence to understand that page 6 of the booklet pertains only to the life insurance policy, and that page 7 of the booklet pertains only to the policy that provides accidental death and dismemberment benefits.

Plaintiffs rely heavily on the case of *Lecker v. General American Life Insurance Co.*, 525 P.2d 1114 (Haw.1974). The employee, Joseph Lecker, Jr., died as a result of an industrial accident within the course and scope of his employment. The

question was whether this type of accidental death was covered. In the opinion the court said:

"The single basic question presented for our consideration by this appeal relates to the legal effect of the provisions contained in the booklet-certificate which ostensibly granted to the beneficiary a greater insurance coverage with respect to accidental death benefits than under the printed policy of group insurance, which limited and excluded accidental death benefits when death results from accidental bodily injury arising from occupational hazards.

\*      \*      \*      \*      \*      \*

"The five limiting provisions in the booklet-certificate omitted, and did not include therein, the additional exclusionary condition set forth in the printed policy to-wit: 'accidental bodily injury arising out of or in the course of any occupation or employment for compensation, profit or gain.'

\*      \*      \*      \*      \*      \*

"It seems to us to be the better view, and which we adopt, that a significant policy exclusion which is not specified in the individual certificate should not be enforced."

A case more nearly in point to the one at bar, is that of *Carter v. General American Life Insurance Co.,* 452 S.W.2d 253 (Mo.App.1970). The employee, Donald L. Carter, resigned his employment on April 5, 1968. He was killed in an automobile accident on April 13, 1968. As an employee he was insured under three separate insurance policies which were a part of a group insurance plan. The life insurance and the accidental death benefit were in separate insurance policies. The defendant insurance company paid $7,000.00 to the plaintiff in life insurance but refused to pay any accidental death benefit. Suit *was brought to recover accidental death* benefit. The court opinion therein reads:

"Each of the group insurance policies contained a provision that the insurance under that policy terminated on the date of termination of the employee's employ-

ment with the employer, McDonnell. However, the group life insurance policy contained a conversion clause, under which an employee whose employment had terminated had the right, upon his application to the defendant within 31 days after such termination and the payment of the applicable premium, to obtain '\* \* \* a policy of life insurance, without disability or other supplementary benefits, . . . .'

\*      \*      \*      \*      \*      \*

". . . rather than three individual certificates, what the defendant in fact issued to Carter was one certificate evidencing his coverage under all three of the group policies; and what was, and was not, stated in the certificate of insurance forms the basis of plaintiff's action.

\*      \*      \*      \*      \*      \*

"Our conclusion that the certificate must be considered as a whole, and that we should not create an ambiguity where none exists, is in accord with what was recently said in *Dieckman v. Moran,* Mo., 414 S.W.2d 320, 321, regarding the rules of construction of language in insurance policies:

" 'The rules of construction of language in insurance policies have been variously stated. "In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, insofar as open to different constructions, the most favorable to the insured must be adopted. (Citations omitted.) However, as said in 14 R.C.L. § 103, p. 931, the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists.' " ' "

In *Carter* as in the case at bar, the group accidental death and dismemberment policy provided that insurance on an employee terminated automatically on the date of termination of employment.

Although the booklet was all the employees had to go by in the instant case, the language used on page 6 of the booklet could not be logically construed to mean that accidental death benefits would be payable for accidental death occurring after termination of employment. Such a construction would be both strained and strange. We do not find any ambiguity in the booklet language being questioned.

■ The trial court had before it both insurance policies and the booklet. Exhibits attached to a petition are controlling over the allegations in the petition. *Schnelle v. McClure*, 330 P.2d 598 (Okl. 1958).

We conclude that the judgment sustaining defendant's demurrer to the amended petition, and dismissing the action with prejudice when plaintiffs elected to stand on their amended petition, should be, and the same is hereby affirmed.

AFFIRMED.

REYNOLDS, P. J., and BOX, J., concur.