Lonnie TIPTON, Jr., Plaintiff,

v.

Shirley PIKE and James Pike, Defendants,

and

MFA Insurance Companies, Garnishee.

No. CIV–81–360–D.

United States District Court, W.D. Oklahoma.

Feb. 10, 1982.

James M. Springer, Jr., and Leon J. York, Stillwater, Okl., for plaintiff.

No attorney of record for defendants.

Melvin F. Pierce, Oklahoma City, Okl., for garnishee.

## OPINION

DAUGHERTY, District Judge.

This is an action, after judgment, to garnish the issuer of a homeowner's insurance policy owned by judgment debtor, Shirley Pike. Plaintiff requests attachment and recovery of the policy proceeds under the terms of personal liability and medical payments insurance coverage. The parties have submitted the case to the Court upon written stipulations of facts and briefs filed herein.

The Plaintiff was injured on October 13, 1978, at the home of Shirley Pike in Stillwater, Oklahoma. At that time, there was in full force and effect a homeowner's insurance policy issued by the Garnishee (hereinafter "MFA") to Shirley Pike, as the insured. The policy was prepared by MFA and delivered by its agent to the insured in Stillwater, Oklahoma.

On December 6, 1979, the Oklahoma State District Court of Payne County entered judgment in favor of the Plaintiff against Shirley Pike and James Pike for $25,000.00 for personal injury and $1,070.10 for medical expense sustained as a result of his injury sustained on October 13, 1978. MFA does not challenge the validity of said judgment, nor does it claim that there was any failure of Shirley Pike and James Pike to comply with conditions precedent under the policy.

The accident occurred as a result of an explosion and flash fire from an automobile owned by Shirley Pike. At the time of the accident, the automobile was parked in her driveway at 1423 South Hartford Street in Stillwater, Oklahoma. The accident occurred while Defendant James Pike, the son of Shirley Pike and a resident at her house, was performing work on the engine of the automobile. The Plaintiff, although standing nearby, was merely observing the work. The accident occurred when gasoline was poured on the carburetor and James Pike attempted to start the automobile engine, at which time an explosion occurred, resulting in the flash fire which injured the Plaintiff. At the time of the accident, the automobile was subject to registration within the meaning of the laws of the State of Oklahoma; it was not in dead storage; and it was not used exclusively on the premises of Shirley Pike.

The above facts are stipulated to by the parties. The only remaining issue in this case is whether the insurance policy covered the liability of Shirley Pike for the Plaintiff's injury and medical expenses. The policy provides, in pertinent part, as follows:

## SECTION II

### COVERAGES

#### COVERAGE E—PERSONAL LIABILITY

This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence.

\*   \*   \*   \*   \*   \*

#### COVERAGE F—MEDICAL PAYMENTS TO OTHERS

This Company agrees to pay all reasonable medical expenses, incurred within one year from the date of the accident, to or for each person who sustains bodily injury to which this insurance applies caused by an accident, while such person is:

1. On an insured premises with the permission of any Insured;

\*   \*   \*   \*   \*   \*

### EXCLUSIONS

This policy does not apply:

1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

(1) any aircraft; or

(2) *any motor vehicle owned or operated by, or rented or loaned to any Insured,* but this subdivision (2) does not apply to bodily injury or property damage occurring on the residence premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the residence premises or kept in dead storage on the residence premises; or

(3) any recreational motor vehicle . . . .

This exclusion does not apply to bodily injury to any residence employee arising out of and in the course of his employment by any Insured except while such employee is engaged in the operation or maintenance of aircraft;

b. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft:

(1) owned by or rented to any Insured . . . .

(2) powered by any outboard motor(s), . . . .

*This exclusion does not apply to (a) bodily injury or property damage occurring on the residence premises or* (b) bodily injury to any residence employee arising out of and in the course of his employment by any Insured;

c. to bodily injury . . . arising out of . . . professional services;

d. to bodily injury . . . arising out of business pursuits . . . .

e. to bodily injury . . . arising out of any premises, other than an insured premises, . . . .

f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.

2. Under Coverage E—Personal Liability

\*   \*   \*   \*   \*   \*

[Emphasis added by the Court]

MFA concedes that Shirley Pike was an "Insured" under the homeowner's policy it issued to her and that the general terms of coverage would include this accident and this Plaintiff. However, MFA asserts that the above emphasized provision of Exclusion 1.a.(2) causes this injury to be excluded from the coverage of the policy. MFA points out that the stipulations of facts that the automobile involved was subject to motor vehicle registration and was not kept in dead storage removes this injury from the exception under Para. 1.a.(2). The Plaintiff does not dispute this but asserts that the last four lines of Para. 1.b. (the latter emphasized material in the quotation above) provides an additional exception to the exclusion in Para. 1.a.(2).

MFA, in opposition to this argument, points to the fact that the exception put forward by the Plaintiff is part of Para. b. and argues that it creates an exception only

to Para. b. and not to Para. a. or any other part of Exclusion No. 1. MFA points out that there is parallel similar material at the end of Para. a. and that there are additional Paragraphs c. through f. under Exclusion No. 1. Hence, the issue in this case boils down to whether or not the material relied upon by the Plaintiff creates an exception to the clause relied upon by MFA.

As this is a case in which subject matter jurisdiction is based upon diversity of citizenship and amount in controversy, 28 U.S.C. § 1332, the Court, in interpreting the insurance contract in the instant case, must apply the law of the State in which it sits, 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Beaver v. Fidelity Life Ass'n,* 313 F.2d 111 (10th Cir.1963); *New York Life Ins. Co. v. Cooper,* 158 F.2d 257 (10th Cir.1946); including its conflicts rule, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As Oklahoma, the State in which this Court sits, is also the State in which this insurance contract was to be performed and in which it was made, the Court must apply the law of Oklahoma, 15 Okl.Stat.1971 § 162.

█ The rules of interpretation of contracts in Oklahoma, as they apply to this case, are well settled. An insurance policy is a contract and is interpreted according to the same rules as other contracts. *Taylor v. New York Life Ins. Co.,* 324 F.2d 768 (10th Cir.1963); *Aetna Ins. Co. v. Jeremiah,* 187 F.2d 95 (10th Cir.1951); *Lester v. Sparks,* 583 P.2d 1097 (Okl.1978); *United States Fid. & Guar. Co. v. Briscoe,* 205 Okl. 618, 239 P.2d 754 (1952); 15 Okl.Stat.1971 § 151.

█ The Oklahoma Supreme Court has stated, in *Torres v. Sentry Ins.,* 558 P.2d 400, at 401 (Okl.1976):

"In construing an insurance contract, its terms and words, if unambiguous, must be accepted in their plain, ordinary and popular sense. *Penley v. Gulf Ins. Co.,* Okl., 414 P.2d 305 (1966). Parties to insurance contract are at liberty to contract for insurance to cover such risks as they see fit and are bound by terms of contract and courts will not undertake to rewrite terms thereof. The construction of an insurance policy should be a *natural* and *reasonable* one, fairly construed to effectuate its purpose, and *viewed in the light of common sense so as not to bring about an absurd result."* [Emphasis indicated by the Oklahoma Court]

Accord, *Tulsa T.S. Emp. U., Loc. 354 v. Broadway T.L. of Tulsa, Inc.,* 550 P.2d 922 (Okl.1976), *cert. denied,* 429 U.S. 961, 97 S.Ct. 386, 50 L.Ed.2d 328. *Cf.* 15 Okla.Stat. 1971 §§ 151–155, 157, 160, 168, 170. This Court followed similar reasoning in *Traverse v. World Serv. Life Ins. Co.,* 436 F.Supp. 810 (W.D.Okl.1977); accord, *Pendergraft v. Commercial Standard Fire & Marine Co.,* 342 F.2d 427 (10th Cir.1965); *Fidelity and Casualty Company of New York v. Reece,* 223 F.2d 114 (10th Cir.1955); *Gulf Insurance Co. v. Gold Cross Ambulance Service Co.,* 327 F.Supp. 149 (W.D. Okl.1971); *Wiley v. Travelers Insurance Co.,* 534 P.2d 1293 (Okl.1974). As noted in 43 Am.Jur.2d *Insurance* § 279 (1969):

Consequently, if such exceptions, exclusions, and limitations are plainly expressed, insurers are entitled to have them construed and enforced as expressed."[1]

In response to certified questions from this Court, the Oklahoma Supreme Court has said:

Where the [insurance] contract is susceptible of two meanings, the words of inclusion are liberally construed in favor of the insured and words of exclusion are strictly construed against the insurer.

*Dayton Hudson Corp. v. Amer. Mut. Liab. Ins. Co.,* 621 P.2d 1155, at 1158 (Okl.1980). Finally, all of the rules of construction are merely aids in reaching the cardinal objective of contract interpretation, which is to find the mutual intent of the parties as they expressed it at the time they entered into the contract. *Universal Underwriters*

1. See, generally, "Annual Survey of Oklahoma Law: Insurance: Contract Interpretation: Ambiguity v. Plain Meaning," 2 Okl. City U.L.Rev. 298 (1977).

*Ins. Co. v. Bush,* 272 F.2d 675 (10th Cir. 1960); 15 Okla.Stat. 1971 §§ 152, 153.

However, the rules of construction most directly applicable in the instant case are that the insurance contract is to be construed as a whole, so as to give effect to every part, if reasonably practicable, with each clause helping to interpret the others, *Universal Underwriters Ins. Co. v. Bush, supra; Metropolitan Life Ins. Co. v. Fisher,* 382 P.2d 434 (Okl.1962); 15 Okl.Stat.1971 § 157; and that the language used in a written contract governs its interpretation where it is clear and explicit and does not involve an absurdity, *Universal Underwriters Ins. Co. v. Bush, supra;* 15 Okl.Stat. 1971 § 154.

■ Applying these rules, together with the others stated herein, the Court finds that the interpretation which the Plaintiff puts forward is unnatural and unreasonable and should not be followed. The contract provision upon which the Plaintiff relies clearly modifies only Para. b. of Exclusion 1 in the policy. To make it modify Para. a. would require the Court to find that the parties intended an extraordinarily awkward paragraph construction in the midst of an orderly series of paragraphs. The ordinary reader would expect Para. a. to be modified by clauses within its borders or preceding or at the end of all paragraphs in the same series or class. See *Norman v. Aetna Life & Cas. Co.,* 551 P.2d 667 (Okl. App.1976).[2] The clause relied upon by the Plaintiff is not any of these things; rather, it is placed within the borders of the second paragraph, Para. b., which is one in a series of six paragraphs.

Hence, the Court is satisfied that no ambiguity exists in the policy and that the insurance policy should be construed according to its plain meaning. As there is only one reasonable construction of the relevant contract provisions, the Court concludes that MFA is not liable to the Plaintiff under the policy.

Judgment should be entered for MFA, the Garnishee.

2. In *Norman,* the Oklahoma Court of Appeals recognized the importance of the location of a provision within the format of a contract in determining its ordinary and plain meaning.