**MIC PROPERTY AND CASUALTY INSURANCE CORP., a Michigan corporation, Plaintiff–Appellee,**

v.

**INTERNATIONAL INSURANCE COMPANY, an Illinois corporation, Defendant–Appellant.**

No. 92–6186.

United States Court of Appeals, Tenth Circuit.

April 6, 1993.

Tim N. Cheek of Cheek, Cheek & Cheek, Oklahoma City, OK, for defendant-appellant.

John F. Percival of Cooper & Zorn, Oklahoma City, OK, for plaintiff-appellee.

Before LOGAN and MOORE, Circuit Judges, and BELOT,* District Judge.

LOGAN, Circuit Judge.

■ Defendant International Insurance Company (International) appeals the district court's grant of summary judgment in favor of plaintiff MIC Property and Casualty Insurance Corporation (MIC). Summary judgment is appropriate only if there is no genuinely disputed material issue of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Reviewing the district court's deci-

---

* The Honorable Monti L. Belot, District Judge, United States District Court for the District of Kansas, sitting by designation.

sion de novo, *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990), and viewing the record in the light most favorable to the nonmoving party, *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991), we reverse in part and affirm in part.[1]

## I

This action for contribution between insurance companies stems from the tragic drowning of a young boy, on June 3, 1987, while he participated in a "free swim" at Oklahoma State University (OSU), as part of the National Youth Sports Program (NYSP), an athletic activity sponsored by the National Collegiate Athletic Association (NCAA). At the time of the accident, the NCAA had obtained from MIC a general liability insurance policy covering the NYSP, effective from June 1, 1987, to June 1, 1988. That policy included as named insureds the NCAA and those institutions hosting the youth program, including OSU.

Also in effect at the time of the accident was another comprehensive general liability policy that the NCAA had obtained from International, policy No. 2760. That policy was effective from June 23, 1986, to June 23, 1987, and included the NCAA as a named insured but not OSU.

The child's estate commenced litigation in state court against the NCAA and OSU, as well as the Oklahoma State Board of Regents, alleging that the negligence of these entities caused the boy's drowning. Both MIC and International received notice of this lawsuit. Although International denied coverage and declined to participate in the state tort litigation, MIC provided a defense to both OSU and the NCAA, ultimately settling the state litigation for $400,000.

MIC then commenced this federal diversity action, seeking contribution from International toward the amount of the settlement. The parties agree that Oklahoma law governs the issues in this case. In granting MIC's motion for summary judgment, the district court determined that MIC was entitled to contribution from International for one-half of the amount of the settlement.

▌ The first issue presented is whether International's policy No. 2760 provided coverage for the NCAA's liability arising from the estate's negligence claims. That policy stated that International would "pay on behalf of [the NCAA] all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury ... to which this insurance applies." Appellant's App., doc. 4, ex. A at 6. The policy described "Athletic Programs—Amateur" as the general liability hazard covered by this insurance. *Id.* at 7. By its clear terms, therefore, this policy covered the accident at issue.

International argues that coverage under the policy was limited to championship events and that the victim was not a participant in such an event. Although there were several endorsements to the policy that specifically referred to championship events, *see* Appellant's App., doc. 4, ex. A at 10 (applying $5,000 deductible for liability resulting from bodily injury or property damage to championship events); *id.* at 17, General Change Endorsement # 4 (addressing coverage "[w]ith respect[ ] to *CHAMPIONSHIP EVENTS* coverage"); *id.* at 31, General Change Endorsement # 15 (amending coverage "[w]ith respect[ ] to Championship Events"), nothing in the language of the policy limited coverage exclusively to championship events.

▌ International nevertheless argues that it was the NCAA's intent, in purchasing policy No. 2760, to obtain liability coverage only for championship events. Absent an ambiguity, however, the intent of the parties must be derived solely from the language of the insurance contract. *See Tipton v. Pike*, 550 F.Supp. 191, 194–95

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

(W.D.Okla.1982) (applying Oklahoma law). The determination of whether policy language is ambiguous is a matter of law, *see Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla.1991), and therefore appropriate for a summary judgment determination. We agree with the district court that the language of policy No. 2760 is not ambiguous. The policy must therefore be construed according to its terms as written. *See Frank v. Allstate Ins. Co.*, 727 P.2d 577, 579–80 (Okla.1986); *see also Morrison Assurance Co. v. City of Opa–Locka*, 389 So.2d 1079, 1080 (Fla.Dist.Ct.App.1980) (per curiam) (insured city claimed it had intended coverage for accident in question; although "[t]hat may well be a valid statement of the city's intent, ... absent ambiguity in the contract terms, a contract of insurance must be given effect as written").

International next argues that its policy did not provide coverage for the accident because the victim was not a participant in a contest or exhibition of an athletic or sports nature sponsored by the NCAA, as those terms are defined by the policy. This argument misses the mark, however, because the question of coverage under this policy does not turn upon whether or not the victim was a participant.

As originally issued, policy No. 2760 provided liability coverage for sums that the NCAA became legally obligated to pay as a result of bodily injury or property damage, *see* Appellant's App., doc. 4, ex. A at 6, except that "the insurance [did] not apply to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the [NCAA]," *id.* at 12. That exclusion included a definition of participant. Subsequently, the parties amended the policy to define participant, with regard to that exclusion, as "any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the [NCAA] including any person permitted to enter any restricted area of competition while occupied by competitors." *Id.* at 22, General Endorsement # 10.

In November 1986, however, in exchange for the payment of an additional premium, the parties amended policy No. 2760 to delete the exclusion for participants in its entirety. *Id.* at 30, General Change Endorsement # 18.[2] That endorsement also provided for coverage of a participant's legal liability, except for incidents involving bodily injury to an NCAA employee or involving one player participant against another "while practicing for or participating in any contest or exhibition of an athletic or sport nature sponsored by the [NCAA]." *Id.* at 30. As a result of this amendment, therefore, at the time of the accident, the policy covered the NCAA for sums for which it became legally obligated to pay as a result of bodily injury, regardless of whether or not the injury was suffered by a participant. Under its clear terms, therefore, International's policy No. 2760 provided coverage for the accident at issue in this case.

## II

■ In light of this conclusion, the next issue presented is whether MIC was entitled to contribution from International toward the amount of the settlement. "In order for there to be contribution among insurers, the interest, as well as the risk and the subject matter [insured], must be identical." *Great W. Casualty Co. v. Truck Ins. Exch.*, 358 F.2d 883, 886 (10th Cir.1966) (applying Oklahoma law). The policies of both MIC and International provided the NCAA with comprehensive general liability coverage for bodily injury resulting from its amateur athletic programs. As to the NCAA, these two policies insured the same interest, subject matter, and risk. *Cf. Arizona Joint Underwriting Plan v. Glacier Gen. Assurance Co.*, 129 Ariz. 351, 352–53, 631 P.2d 133, 134–35 (Ct.App.1981) (requiring contribution between liability insurers when first policy insured nurse and

2. This endorsement was originally captioned General Endorsement # 15. *Id.* at 30. Because there were two different endorsements numbered 15, however, General Endorsement # 19 changed the endorsement # 15 at issue here to endorsement # 18. *Id.* at 36.

professional corporation, second policy insured only nurse, and third policy insured, among others, nurse, two doctors and professional corporation; as to the nurse, all three policies insured identical interest, subject matter and risk). MIC was therefore entitled to contribution from International toward the settlement unless precluded for some other reason.

International argues that it is not liable for contribution toward the settlement at this juncture because there has not yet been a determination of the liability of its insured, the NCAA. Further, International asserts that the settlement of the state court litigation was made only on behalf of OSU and not on behalf of the NCAA.

■ In the state court pleadings, the victim's estate alleged that the negligence of both OSU and the NCAA caused the death of the child. International's policy No. 2760 provided that International "shall have the right and duty to defend any suit against the insured seeking damages on account of [covered] bodily injury or property damage, even if. any of the allegations of the suit are groundless, false or fraudulent...." Appellant's App., doc. 4, ex. A at 6. Because the state court pleadings alleged claims covered by policy No. 2760, International had a duty to defend its insured against that state action, *see generally Texaco, Inc. v. Hartford Accident & Indem.*, 453 F.Supp. 1109, 1112 (E.D.Okla.1978), despite its refusal to do so.

In exchange for the payment of $400,000, the victim's estate agreed to dismiss and release its claims against both OSU and the NCAA. Appellant's App., doc. 9, ex. D. The settlement did not address the culpability of the parties nor did it specifically apportion the settlement amount between defendants.

■ As a result of the settlement of the state court action, the NCAA became legally obligated to pay damages resulting from bodily injuries the victim had suffered during an amateur athletic program. International's policy No. 2760 covered such an obligation. Having refused to participate in the NCAA's defense and to take part in

the settlement, despite its duty to defend its insured against these claims, International may not seek to litigate the issue of the parties' negligence at this late juncture. *See Home Indem. Co. v. Mead Reinsurance Corp.*, 166 Ariz. 59, 61–63, 800 P.2d 46, 48–49 (Ct.App.1990) (citing *Pacific Indem. Co. v. Linn*, 590 F.Supp. 643, 650–51 (E.D.Pa.1984), *aff'd*, 766 F.2d 754 (3d Cir. 1985)); *cf. Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co.*, 129 F.2d 621, 626 (10th Cir.1942) (when insurer denies coverage and refuses to defend insured and insured thereafter settles claims, insured may then seek recovery against insurer and such recovery "is generally measured by the coverage under the policy and the reasonableness of the settlement").

■ International argues that if its policy did provide coverage for the NCAA's liability resulting from the estate's negligence claims, International's exposure is limited to excess coverage. Policy No. 2760, however, specifically provided that "[t]he insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance." Appellant's App., doc. 4, ex. A at 3. There is nothing in the language of policy No. 2760 that would indicate that coverage of these claims was excess.

### III

■ Finally, International, relying on the "other insurance" clause in policy No. 2760, challenges the district court's decision requiring International to contribute one-half of the settlement amount. The "other insurance" clause provides for two situations:

When both this insurance and other insurance apply to the loss on the same basis, ... [International] shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be

**578**

liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid....

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, [International] shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Appellant's App., doc. 4, ex. A at 3.

The parties do not dispute that the "other insurance," MIC's policy, did not contain an "other insurance" clause. Therefore, because the "other insurance does not provide for contribution by equal shares," International must contribute toward the settlement according to the proportion of its policy limits with the total insurance coverage available. The parties agree that International's policy limit is $250,000, while MIC's coverage limit is $500,000, for a total available coverage of $750,000. To determine the proper contribution of each party, we must also recognize that International insured only the NCAA, whereas MIC insured both the NCAA and OSU. Because the settlement agreement did not apportion the liability between the parties, we must assume that each alleged joint tortfeasor is equally responsible for the settlement amount. Thus, both International and MIC are responsible for the NCAA's portion, which is $200,000, but only MIC must pay the $200,000 owed by OSU. Applying the contribution by limits formula, International must contribute one-third of the NCAA's share, $66,667, and MIC must pay two-thirds of the NCAA's share and the entire share of OSU, a total of $333,333.

The judgment of the district court, to the extent it requires International to contribute one-half of the settlement amount, is REVERSED, and the cause is REMANDED to the district court for proceedings consistent with this opinion. In all other respects, the district court's decision is AFFIRMED.