173 N.J. Super. 381 (1979)
414 A.2d 551
LEONORA GOTTFRIED, PLAINTIFF-APPELLANT,
v.
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND THE PENN MUTUAL LIFE INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1978.
Decided March 20, 1979.
Before Judges MATTHEWS, KOLE and MILMED.
Richard H. Thiele, Jr., argued the cause for appellant (Wharton, Stewart & Davis, attorneys; Richard H. Thiele, Jr. and Ralph L. Straw, Jr., on the brief).
William L. Dill, Jr., argued the cause for respondents (Stryker, Tams & Dill, attorneys; William L. Dill, Jr., of counsel; James D. Ferrucci, on the brief).
PER CURIAM.
The judgment under review is affirmed substantially for the reasons expressed by Judge Gaynor in his written opinion of September 9, 1977.
Additionally, see Gilmour v. Security Mutual Casualty Company, 348 Mass. 785, 204 N.E.2d 502 (Sup.Jud.Ct. 1965); Goldstein v. Paul Revere Life Insurance Company, 164 So.2d 576 (Fla. Dist.Ct. of App. 1964), cert. den. 170 So.2d 587 (Fla. 1964); Smith v. Continental Casualty Company, 203 A.2d 168 (D.C.Ct. of App. 1964).
KOLE, J.A.D. (dissenting).
I am constrained to dissent.
In my view the opinion of the court below, which the majority affirms, fails to take into account the distinction, which has been adopted in strong dicta by our Supreme Court, between an *382 "accidental means" and "accidental result" policy.[1] The Supreme Court has indicated that a policy allowing compensation for "accidental bodily injury" is an "accidental result" policy.
Moreover, an insured purchasing a policy with the "accidental bodily injury" language in it may be said, as a matter of law, reasonably to have expected that a 44-year-old man, in the patently healthy condition of this insured prior to the incident here involved, would be compensated under this type of policy for a totally unexpected death that resulted from his voluntary overexertion through strenuous exercise. By affirming the judgment below the majority opinion effectively has obliterated the distinction between an accidental means and an accidental result policy in this area of the law and, as I see it, has adopted the converse of Justice Cardozo's suggested rule in his dissent in the Landress case, infra, at least in heart cases. Thus, in effect, the majority holds that any accidental benefit policy, irrespective of whether the language therein is means- or result-oriented, bars recovery for this type of unexpected heart death simply because it is brought about by voluntary excessive exertion of an overtly healthy man with a latent unknown heart or vascular disease.
Obviously, there are gradations of factual patterns, and not every insured who suffered a myocardial infarction could recover under these policies. The matter would depend upon such things as the age, the apparent and known or unknown physical condition of the insured, and other factors, which will vary from case to case. Moreover, the issue of the reasonable expectation *383 of an insured may involve the resolution of a question of fact, rather than law. See Perrine v. Prudential Ins. Co. of America, 56 N.J. 120 (1970).
In her complaint plaintiff alleged that, as beneficiary under four life insurance policies issued by defendant Penn Mutual and one policy issued by defendant Prudential, she was entitled to accidental death benefits as the result of her husband's fatal heart attack.
Defendants denied liability, principally on the ground that no coverage was intended for death resulting from voluntary exertion as opposed to some unforeseen and unexpected "accident." The evidence was undisputed that decedent's death was caused by acute myocardial infarction following his voluntary participation in a vigorous basketball game. Plaintiff conceded below, as she does on appeal, that the death was not, therefore, caused by accident. Her position has been, however, that the policies herein insured not only against injuries from accidental causes, but also against accidental results, regardless of the cause. Since the heart attack here is an accidental result, she reasons, defendants are liable.
The facts concerning the circumstances and cause of her husband's death were essentially undisputed. At the time of his death he was a 44-year-old comptroller for the Singer Company. On Saturday morning, May 4, 1974, he went to his office to tender his resignation, apparently after having been unhappy in his job for some time. He had already located a new job in Florida.
Upon returning home that afternoon he worked in his yard for about three hours. He and his wife then attended a dinner party at a friend's house. At about 9 p.m. a "light dinner" consisting of bouillabaisse was served. After dinner, at about 11 p.m., decedent and two other men played a vigorous 30-45-minute game of basketball against three teenagers. The host had a basketball court at the base of a slight hill on the side of his house. When the game was over decedent walked up the incline *384 to the house. He then began to moan, his face became white and he slumped into his chair.
Plaintiff, decedent's wife, noticed that when decedent returned to the house he was sweating "profusely," had "lost his color" and was "very clammy." He was dead on arrival at the hospital at 12:03 a.m., May 5.
According to plaintiff, decedent enjoyed generally good health and had never experienced heart problems before. Nor had she observed anything unusual on the day in question. Decedent was very active athletically throughout his life, and at the time of his death he was active in golf, tennis, volleyball and swimming.
The death certificate indicated the cause of death as "acute myocardial infarction." The only other medical evidence was the testimony of Dr. Goodman, a specialist in internal medicine and a subspecialist in heart and lung disease, who testified on behalf of plaintiff. Dr. Goodman had never examined decedent. On the basis of the death certificate and a hypothetical question incorporating the circumstances of the death, the doctor stated that the cause of death was acute myocardial infarction. He described the mechanics of decedent's death as follows: All males have a "condition" known as coronary arteriosclerosis, which develops at about the age of 20 and progresses with age. This "condition" does not become a "disease" until certain symptoms develop. In the case of decedent the combination of the dinner, the basketball game and the walk up the incline caused the "condition" to become a "disease" resulting in the myocardial infarction. Decedent's sweating and paleness just before his death were the symptoms of this process. The doctor further stated that death would not have occurred when it did but for decedent's strenuous activity after dinner.
The testimony for the defense was limited to that of decedent's secretary and supervisor, both of whom stated that on the day before and the morning of his death, decedent's lips were blue. While the secretary felt decedent did not look well, the *385 supervisor testified that on the morning of his death decedent was a "picture of health," except for the blue color of his lips.
All policies herein purport to extend coverage for "accidental bodily injury" (or "injuries"). This choice of language is critical. The trial judge deemed this phrase to be equivalent in effect to policies insuring against injuries caused by "accidental means" or causes, ruling that where the injury, as here, was not caused by accident, there could be no liability under an "accidental bodily injury" clause. Plaintiff contends that the two concepts should be distinguished, such that, under the language used in the policies by these defendants, only an accidental result need be shown.[2]
In its written opinion, on the basis of which the majority affirms the judgment below, the trial judge reviewed the well-established case law with respect to "accidental means" policies as requiring some unforeseen and unexpected event which precedes and produces the injury. It rejected plaintiff's attempted distinction between the language of the policies in question  "accidental bodily injury"  and other cases involving policies framed in terms of "accidental means." It ruled that no such distinction existed, and therefore plaintiff could not avoid what it considered the clear line of precedents suggesting that a heart attack following voluntary exertion could not qualify under provisions requiring death by accident, regardless of whether the policy referred to "accidental bodily injuries" or "accidental means." Accordingly, the judgment was entered in favor of defendants.
*386 While the distinction between accidental means and accidental injury has been criticized as illusory, it has been accepted in some jurisdictions. New Jersey has never directly considered the question in the context of an "accidental bodily injury" policy. It has, however, developed well-defined principles applicable to "accidental means" policies. The chief task for this court is to decide whether "accidental bodily injury" insurance insures against a risk which is any different from that covered by insurance against injury by "accidental means" or causes.
The seminal case in this area is Mutual Accident Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60 (1889), which set forth the majority view that "accidental means" policies require that the injury be caused by something unforeseen, and that if the injury was an unexpected result of voluntary conduct during which nothing unusual occurred, no recovery could be had. The contrary minority view derives from Justice Cardozo's dissent in Landress v. Phoenix Ins. Co., 291 U.S. 491, 498, 54 S.Ct. 461, 463, 78 L.Ed. 934 (1934), in which he assailed the Barry approach with the following oft-quoted phrase: "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." 291 U.S. at 499, 54 S.Ct. at 463. Justice Cardoza reasoned that the average policyholder would justifiably think that an "accidental means" policy would insure against accidental results, even though no outward accident occurred in the usual sense. Ibid. Hence, the cause of death therein  sunstroke while playing golf  should be covered since it was an accidental result, albeit of ordinary conduct. Id. at 501, 54 S.Ct. at 464.
While the Barry view represents the majority, the modern trend is in favor of the Cardozo approach. 10 Couch on Insurance 2d, § 41.28 at 47-50, § 41.30 at 53-55 (1962); 44 Am. Jur.2d, Insurance, § 1221 at 67-69; Annotation "Insurance: `accidental means' as distinguishable from `accident,' `accidental result,' *387 `accidental death,' `accidental injury,' etc.," 166 A.L.R. 469 (1947).
In the leading New Jersey case, Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511 (1963), however, our Supreme Court expressly adopted the Barry approach. There decedent suffered a myocardial infarction after picking up some fallen cartons in the warehouse where he worked. Nothing unusual happened while he lifted the cartons, although he developed a coughing spell and collapsed later that night. The insurance policy required bodily injury effected through "external, violent and accidental means." After reviewing the relative merits of the Barry and Cardozo approaches, the court adopted the former. The court held that a heart attack following voluntary exertion during which no mishap occurred could not warrant recovery under an "accidental means" policy. Id. at 526, 538.
Plaintiff herein relies upon two instances of dicta in Linden which allegedly indicate the court's intention to distinguish "accidental means" policies from "accidental bodily injury" policies. First, in criticizing the Cardozo test because it ignores the contract language by reading in the policyholder's perhaps contradictory expectations, the court reasoned that the outcome under that view
* * * has to be the same whether the key words of the contract are "accidental bodily injuries"  now used in some accident insurance policies, * * where Cardozo's criterion is perhaps more fitting  or the obviously narrower terminology * * * of "bodily injuries effected * * * through * * * accidental means," * * *. [Id. at 523, citations omitted]
I agree with plaintiff that the import of the above dictum is that "accidental bodily injury" might insure against a broader risk than that covered by only "accidental means." I also agree that the trial judge misinterpreted this reference as expressing the court's view that the outcome should be the same regardless of which phrase is used. To the contrary, from the context it is *388 clear that the court was condemning such a view as being the logical result of the Cardozo analysis.
In addition to the foregoing dictum plaintiff cites the Linden court's further apparent approval of her position in the following footnote:
Where policies provide benefits in the event of "accidental bodily injuries," as distinct from those, as in the case at bar, conditioning payment upon sustainment of injuries "effected * * * through * * * accidental means," coverage has been found in the event of heart injury occurring as the result of a voluntary act, although the particular jurisdiction recognizes the distinction between accidental death and death resulting from accidental means. See e.g., Love v. American Casualty Co. of Reading, Pa., 113 U.S.App.D.C. 195, 306 F.2d 802 (D.C. Cir.1962); Pledger v. Business Men's Accident Ass'n., 228 S.W. 110 (Tex. Comm. of Appeals, adopted by Sup.Ct. 1921). [Id. at 527, n. 4]
The trial court rejected the persuasiveness of this reference as overlooking the context in which the cases were cited. To the contrary I think the footnote supports plaintiff's position that the Supreme Court perceived (albeit via dicta) the distinction she urges.
The first case cited, Love v. American Cas. Co. of Reading, Pennsylvania, 306 F.2d 802 (D.C. Cir.1962), involved an "accidental bodily injury" police. Decedent died from an acute myocardial infarction after riding through an exceptionally severe storm which caused her to be buffeted by high winds and rain. On appeal from the trial court's granting of the insurer's motion for summary judgment, the court reversed, holding that a fact question existed as to whether decedent suffered "accidental bodily injury," a broader and more inclusive concept than injury caused by "accidental means." Id. at 804-805.
In the other case cited in the Linden footnote, Pledger v. Business Men's Accident Ass'n., 228 S.W. 110 (Tex.Comm. of App. 1921), the court ruled that where the policy insured against accidental death, as opposed to death by accidental means, a death caused by heart attack after voluntary exertion was *389 covered, since the means were irrelevant. Id. at 113.[3] The court applied the distinction urged by plaintiff:
* * * there is a well-recognized distinction between accidental death and death resulting from accidental means. In the former, death is accidental if the result is an accident, whether due to accidental means or not. In the latter, regardless of whether the means by which death is produced be voluntarily employed, the result is due to accidental means, if in the act preceding the injury something unforeseen, unusual, and unexpected occurs which produces the result.... Death caused by accidental means is an accidental death; but an accidental death may or may not be the result of accidental means. [Ibid.]
The trial judge cited two cases in support of his conclusion that the concept of "accidental injury" necessarily implies an element of causation  Schwartz v. John Hancock Mut. Life Ins. Co., 96 N.J. Super. 520 (Law Div. 1967), aff'd 99 N.J. Super. 223 (App.Div. 1968), certif. den. 51 N.J. 393 (1968), and Chelly v. Home Ins. Co., 285 A.2d 810 (Del.Super. 1971), aff'd o.b. 293 A.2d 295 (Del.Sup.Ct. 1972). However, I find neither case apposite. In Schwartz, unlike here, there was clearly a causing accident, and the policy in Chelly was one of "accidental means."
Also relied upon by the trial court is Harris v. John Hancock Mut. Life Ins. Co., 41 N.J. 565 (1964), in which plaintiff suffered a myocardial infarction while engaged in his regular work, no mishap occurring during the performance thereof. The policy applied to bodily injury as the result of an accident, language which the court equated to an "accidental means" policy, as opposed to one insuring "merely against an accidental result." Id. at 567, citing the aforementioned Linden footnote, 40 N.J. at 527, n. 4. Where the policy thus requires some accidental cause, the test is whether the events preceding the injury would be *390 perceived by an average policyholder as "accidental," in light of "the limiting language of the insuring clause." 41 N.J. at 568. The court concluded as follows:
Where the resultant injury is to the heart, brought on by reason of exertion from activity, voluntarily pursued, in which nothing unexpected or unforeseen occurs beyond the injury itself, and there is nothing which a layman would understand to be an accident, the average policyholder could not reasonably reach a conclusion of coverage. [Ibid.]
By acknowledging that a policy might insure against accidental results rather than against the more "limiting" concept of injury caused by accident, the Harris court arguably recognized the distinction urged by plaintiff. Thus, regardless of the Harris ruling that a heart attack such as occurred herein could not be caused by accident, a heart attack nonetheless might trigger liability where the policy speaks not of causation, means, or the result of an accident, but rather of "accidental bodily injury." Cf. Cattani v. Board of Trustees, Police & Firemen's Retire. Sys., 69 N.J. 578, 586 (1976); Russo v. Teachers' Pension and Annuity Fund, 62 N.J. 142, 154 (1973).
To summarize New Jersey's experience, no case has held that the language "accidental bodily injury" insures against an accidental injury not caused by accidental means. But such a distinction has at least been postulated in case involving "means" policies. In addition to the cases already discussed, see Dikowski v. Metropolitan Life Ins. Co., 128 N.J.L. 124, 126 (E. & A. 1942) and Kennedy v. U.S. Fidelity, etc., Co., 113 N.J.L. 431, 437 (E. & A. 1934), in which the court acknowledged the distinction between an injury which is accidental and one caused by accidental means; but the distinction was not determinative in either case.
*391 Both parties invoke cases from other jurisdictions which support their respective positions. Compare Kearbey v. Rel. L. Ins. Co. of Webster Groves, 526 S.W.2d 866 (Mo. Ct. App. 1975) and Johnson v. National Life & Accident Ins. Co., 92 Ga. App. 818, 90 S.E.2d 36 (Ga.Ct.App. 1955) (both suggesting that "accidental injury" is a different risk than injury caused by accident) with Nicholas v. Mutual Benefit Life Insurance Co., 451 F.2d 252 (6 Cir.1971) (construing "accidental bodily injuries" as requiring accidental cause).
The majority opinion seeks support from cases in other jurisdictions denying recovery for injuries due to heart attack following voluntary exertion. See Annot., "Heart attack following exertion or exercise as within terms of accident provision of insurance policy," 56 A.L.R.2d 800 (1957). A review of virtually all of those cases, however, reveals that either they involved "accidental means" or causation policies (see, e.g., Smith v. Continental Casualty Company, 203 A.2d 168 (D.C.Ct. of App. 1964); Miller v. Prudential Insurance Company of America, 183 Kan. 667, 331 P.2d 310 (Sup.Ct. 1958), or, while involving "accidental bodily injuries" policies, they grounded their decisions upon earlier "accidental means" cases without acknowledging the distinction. See e.g. Gilmour v. Security Mutual Casualty Company, 348 Mass. 785, 204 N.E.2d 502 (Sup.Jud.Ct. 1965); Goldstein v. Paul Revere Life Insurance Company, 164 So.2d 576 (Fla.Dist.Ct. of App. 1964), cert. den. 170 So.2d 587 (Fla. 1964). We note that Goldstein relies on this State's Linden case, supra, even though Linden involved an "accidental means" policy.
In my view, the reasonable expectation of a policyholder, faced with the facts in this case (including the lack of knowledge of any preexisting disease), is that a heart attack following strenuous physical activity, even though voluntary, would constitute an "accidental bodily injury."
I have concluded that, under the present status of New Jersey law, the distinction urged by plaintiff best achieves the reasonable *392 expectations of a policyholder, especially in view of our Supreme Court's acknowledgment of such a distinction in Linden, supra. As I have indicated, from the standpoint of the average insured, the phrase "accidental bodily injury" would be deemed to include a heart attack following strenuous physical activity, under the circumstances here involved, even if that activity is voluntary. To be distinguished, among other situations, would be a heart attack while at rest. A death therefrom cannot be a predicate for recovery, since there would be no unusual causing incident in the eyes of the average insured; it would be considered "natural" rather than "accidental." Additionally, death, even under the circumstances of the instant case, of a 65 year old man might not justify recovery under the policies before us, either as a matter of fact or law. Thus, defendants' fear that a decision for plaintiff would render all sudden deaths accidental is without basis. In any case, insurers can easily avoid coverage for such injuries or deaths by adopting language requiring accidental causation or means. Cf. INA Life Insurance Company v. Brundin, 533 P.2d 236, 243 (Sup.Ct.Alaska 1975); Tomaiuoli v. U.S. Fidelity and Guaranty Co., 75 N.J. Super. 192, 205-207 (App.Div. 1962).
In view of the trial court's ground of decision, it did not reach the additional issues of whether coverage was defeated by other provisions in the policies relied on by defendants. I deem a remand unnecessary on these issues, since the record is sufficient to warrant the exercise of our original role in making findings. R. 2:10-5. Cf. Kievit v. Loyal Protect. Life Ins. Co, 34 N.J. 475, 490 (1961).
All of the policies in their insuring clauses permit recovery only where the death resulted directly "and independently of all other causes" from the accidental bodily injury.[4]
*393 Defendants contend that there is evidence that prior to the precipitating event in this case, decedent was working long hours, unhappy in his work and under a very great strain, and on the morning of the day when he suffered his heart attack, he had advised his employer that he was leaving for another job; that plaintiff's expert had testified that physiological changes attendant upon a heart attack could be produced by emotional strain, as well as physical exertion; and that in an action against decedent's employer, plaintiff had claimed that the heart attack resulted from the stress and strain occasioned by his difficulties at work. They also assert that there was evidence from decedent's coemployees that his lips were blue on the day before, and the morning of, the day he suffered the attack; and that plaintiff's expert stated that such a condition was a manifestation of cyanosis, frequently a circulatory disorder. All of this evidence, it is said, demonstrates that the fatal heart attack was caused, at least in part, by coronary arteriosclerosis of sufficient severity to produce a coronary occlusion, thus barring recovery on the policies as a matter of law.
I disagree. From the proofs the only reasonable inference is that not withstanding his arteriosclerosis, the infarction would not have occurred when it did but for decedent's exertion, and that prior to his death decedent had not known of, or experienced or been treated for, any heart, arteriosclerotic or similar problems or symptoms. It is patent that the exertion after dinner was the sole proximate cause of the infarction, acting on an underlying passive arteriosclerotic condition that became a "disease" only when such exertion resulted in the development of the symptoms thereof. Under these circumstances, the alleged *394 emotional strain and the severity of decedent's arteriosclerosis cannot fairly be said to be a contributing or proximate cause of his death. To conclude otherwise on this record is to engage in sheer speculation.
Where, as here, a latent, inactive condition or disease, not known to the insured, is not accompanied by any symptoms and is precipitated or activated by an accident or accidental bodily injury into a resulting disability or death, such condition or disease is neither an independent cause under the insuring clause, nor a disease such as to defeat coverage under the exclusion clause, involved in the instant case. Kievit v. Loyal Protect. Life Ins. Co., supra, 34 N.J. at 483-489, and cases cited therein. See also Boring v. Haynes, 209 Kan. 413, 496 P.2d 1385 (Sup.Ct. 1972).
I see no merit in defendants' endeavor to distinguish Kievit, supra, from Tomaiuoli v. U.S. Fidelity and Guaranty Co., 75 N.J. Super. 192 (App.Div. 1962) on the ground that where the underlying condition is arteriosclerosis, Kievit is inapplicable and coverage must be denied. Indeed, Kievit discussed cases involving arteriosclerosis where recovery was allowed. See 34 N.J. at 486-487. Moreover, we specifically distinguished Kievit in Tomaiuoli by stating that the disease in the matter before us was active, known and symptomatic before death; we characterized the distinction as one "between an active, patent progressive disease which in its very nature is competent to contribute to death, and a latent or dormant, symptom-free condition, possibly aggravated or exacerbated by bodily injury." 75 N.J. Super. at 197, 203, 205.
Accordingly, I have concluded that in the present case, the death resulted directly and independently of all other causes from the accidental bodily injury.
Defendant Penn Mutual claims that there is a further bar to recovery on its policies by virtue of another provision thereof. The insuring clause requires that the accidental bodily injury be *395 evidenced by a "visible contusion or wound on the exterior of the body (except in the case of drowning or of internal injury revealed by an autopsy) ..." The policies also granted Penn Mutual "the right and opportunity to examine the body and to make an autopsy unless prohibited by law."
No autopsy was performed. Plaintiff testified that her rabbi informed her that an autopsy was forbidden by her religion. Penn Mutual introduced no medical proofs and never requested an autopsy. The record is barren of the reason for the lack of any such request. But Penn Mutual contends that it "probably didn't even know of ... [the] death until long after burial. When it did later learn of his death, it had no reason to request an autopsy," since "the plain language of its policies ... placed upon the beneficiary the burden of demonstrating an internal injury revealed by an autopsy if that fact were to be relied upon." It is unfair, it is argued, to shift that burden by substituting the opinion evidence of a physician  plaintiff's expert , who had never examined the insured, for an autopsy which might well have shown that the arteriosclerosis may have been such that death would have occurred without any considerable physical exertion.
The undisputed testimony of the physician establishes that an internal injury did in fact occur. He stated that the infarction involved the death of all or a part of the heart muscle; and that there was a rupturing or breaking away of a plaque in a coronary artery which caused the artery to be blocked, thus shutting off the blood supply to the heart muscle and preventing it from further functioning. The inference that an internal injury occurred and caused death is, therefore, inescapable.
The purpose of a visible wound or mark clause, such as that in the instant case, is to protect the insurer against fabricated or simulated claims; it should be given a reasonable and practical construction. See 44 Am.Jur.2d Insurance, § 1224, at 73 (1969). See also Annot., "Construction and effect of `Visible Sign of *396 Injury' and similar clauses in accident provision of insurance policy," 28 A.L.R.3d 413, 420 (1969).
Where, as here, death resulted from an undisputed heart attack involving internal injury, there is no danger of simulation. The insurer could have produced medical testimony to show that the arteriosclerosis was such that death would have occurred without any significant physical exertion; or it could have requested an autopsy which might have supported that thesis. It did neither. The danger against which the autopsy clause was designed to guard was not present in this case. Penn Mutual should not be permitted to leave unchallenged plaintiff's evidence that a fatal injury occurred and then to seek refuge in the autopsy clause as a bar to a finding of the existence of that injury. The defense that no internal injury was revealed by an autopsy must fail, whether the legal theory precluding its assertion be designated waiver or simply fairness to the insured. See 44 Am.Jur.2d, Insurance, § 1227 at 75; 23 A.L.R.3d, op. cit., at 425; Annot. "Time for making autopsy or demand therefor under insurance policy," 30 A.L.R.2d 837, 838-842 (1953).
I would reverse and remand for entry of judgment in favor of plaintiff and against defendants with respect to all of the policies.
NOTES
[1] Dicta which, particularly as here, has been repeated in a number of Supreme Court cases, may serve as a significant guide as to what that court would decide were the issue squarely presented to it. See Lehigh Valley R.R. Co. v. Chapman, 35 N.J. 177, 187, cert. den. 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 192 (1961); State v. Dolton, 146 N.J. Super. 111, 115 (App.Div. 1977), certif. den. 74 N.J. 252 (1977).
[2] At trial and on this appeal both sides assumed that Penn Mutual had revised three of its policies before decedent's death so as to replace the "accidental means" with the "accidental bodily injury" language contained in its fourth policy. I do not consider the fact that these changes were made as necessarily significant with respect to the proper result to be reached in this case.
[3] Since the Pledger case, Texas has abandoned the distinction between accidental means and accidental bodily injury (or death), and in effect adopted the views expressed in the Cardozo dissent in Landress, supra. Republic Nat'l Life Ins. Co. v. Heyward, 536 S.W.2d 549 (Sup.Ct. 1976).
[4] The policies also contain clauses excluding coverage if death resulted "directly or indirectly from bodily or mental infirmity or disease" (Prudential) or "directly or indirectly from ... illness or disease of any kind or from physical or mental infirmity ..." (Penn Mutual). Such an exclusionary provision adds nothing to the insuring clause and the same principles apply to both types of provisions. Kievit v. Loyal Protect. Life Ins. Co., supra, 34 N.J. at 482-483, 488-489.