671 A.2d 1108

VIRGINIA GAMINO, PLAINTIFF–APPELLANT, v. GENERAL
AMERICAN LIFE INSURANCE COMPANY,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 18, 1996—Decided March 5, 1996.

Before LANDAU, KLEINER and HUMPHREYS, JJ.

*Jacqueline B. Bittner* argued the cause for appellant (*Oliver Kovacs,* attorney; *Ms. Bittner,* on the brief).

*David R. Kott* argued the cause for respondent (*McCarter & English,* attorneys; *Mr. Kott,* of counsel, and *Mr. Kott* and *Katie A. Gummer,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This appeal by plaintiff Virginia Gamino raises the issue, novel in this jurisdiction, whether our insurance laws mandate continuation of a group accidental death benefit during the thirty-one day period statutorily allotted for conversion of a terminated employee's group life insurance coverage to a policy of individual life insurance. We conclude that the statutory individual life insurance conversion privilege and automatic thirty-one day continuation of the insured's life insurance benefit is not applicable to the accidental death and dismemberment benefits provided in a separate schedule of decedent's group policy, and accordingly affirm the dismissal of Gamino's complaint for failure to state a cause of action against defendant General American Life Insurance Company.

## The Facts and Applicable Statutes

Luis G. Gomez died on September 11, 1992, within thirty-one days after the termination of his employment. He was covered under a group insurance policy purchased by his New Jersey

employer, Federal Warehouse, from defendant General American Life Insurance Company (General American). Under *N.J.S.A.* 17B:27–19, decedent had the right, without evidence of insurability, to purchase "an individual policy of life insurance without disability or other supplemental benefits ..." during the thirty-one day period following termination. The statute goes on to provide, in *N.J.S.A.* 17B:27–21, that when death ensues within the thirty-one day conversion envelope,

> [t]here shall be a provision that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with section 17B:27–19 or section 17B:27–20 above and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

The applicable group policy summary issued to decedent contains a schedule entitled "Life Insurance Benefits" and a separate schedule entitled "Accidental Death and Dismemberment." The "Life Insurance Benefits" schedule sets forth the insured's conversion privileges to an individual life insurance policy, advising that such individual policy "will not include disability or other supplemental benefits." It also recites that if death occurs during the thirty-one days when the insured is eligible to apply for an individual policy of life insurance, the death benefit will be paid even if no conversion application is made.

By contrast, the separate "Accidental Death and Dismemberment" schedule in the policy summary specifically refers to its maximum amount as "equal to the amount of Life Insurance" and provides, "You may not convert this benefit to an individual policy."

General American has paid the face amount of the life insurance benefit but not the accidental death benefit.

### *The Present Action*

Plaintiff Virginia Gamino is the widow of Luis Gomez. She brought this action against General American seeking a

declaration that the conversion provision of the group policy is applicable to "life insurance as well as accidental death and dismemberment insurance" and an order declaring that Great American must pay benefits to her under the accidental death and dismemberment portion of the policy. The complaint points to the broad definition of "life insurance" in *N.J.S.A.* 17B:17–3, which includes "provisions for ... additional benefits in event of death by accident or accidental means ... whether such provisions are incorporated in a policy or contract of life insurance or in a policy or contract supplemental thereto." In consequence, Gamino says, the life insurance conversion privilege required by *N.J.S.A.* 17B:27–19 and the automatic thirty-one day coverage provided under *N.J.S.A.* 17:27–21 must be deemed applicable to benefits under the Accidental Death and Dismemberment schedule of decedent's group policy, notwithstanding the clear statement in that schedule that the Accidental Death and Dismemberment coverage may not be converted to an individual policy.

On motion by General American, the Law Division judge entered a *R.* 4:6–2(e) order dismissing the action for failure to state a claim for relief. He concluded, in reliance upon holdings in other jurisdictions with similar statutes, that the New Jersey Life and Health Insurance Code (*N.J.S.A.* 17B:17–1 to 36–4) (the Code) does not require General American to provide supplementary accidental death benefits, as distinct from the traditional group life insurance policy death benefits, when accidental death occurs during the thirty-one days following termination of employment.

In reviewing the dismissal order we think it important to emphasize that this is not a case of an insured's detrimental reliance upon ambiguous terms of an insurance contract. Here, the insured was informed in unmistakable terms that the life insurance coverage set forth in the schedule was convertible, but without disability and supplementary benefits, essentially the same exclusionary words used in *N.J.S.A.* 17B:27–19. The accidental death and dismemberment schedule specifically advised that its coverage was not convertible. As the accidental death and

dismemberment benefits were unambiguously nonconvertible under the Great American schedule, they could not be payable as a *N.J.S.A.* 17B:27–21 claim under the group policy for an accidental death during the thirty-one day conversion period unless the provisions of the group insurance contract violated the Code. We note that the accidental death and dismemberment schedule of the summary plan description given to the decedent refers to the maximum amount of insurance afforded thereunder in these words: "An amount equal to the amount of life insurance." The same schedule states: "You may not convert this benefit to an individual policy."

In essence, appellant urges that the breath of the definition of life insurance contained in *N.J.S.A.* 17B:17–3 constitutes a demonstration of legislative intent that accidental death benefits be included within the scope of the *N.J.S.A.* 17B:27–19 conversion privilege for "life insurance without disability or other supplementary benefits," and that this definition is sufficient to render unenforceable the plain text of the insured's accidental death and dismemberment schedule. We find no such clearly defined legislative purpose. It is surely not expressed in the group policy conversion provisions, *N.J.S.A.* 17B:27–19, 20, 21.

Unlike a life insurance policy, which is actuarially premised upon the time of an insured's certain and inevitable death, an accidental death benefit is actuarially premised upon the wholly uncertain contingency of accident, and upon the further contingency that such accident produces death. This difference is recognized in the Code. It makes different provisions for companies not licensed as life insurers but who may be licensed to do the business of "health insurance" as defined in *N.J.S.A.* 17B:17–4. "Health insurance" is defined in that section of the Code as a

contract or agreement whereby an insurer is obligated to pay or allow a benefit of pecuniary value with respect to the bodily injury, disablement, sickness, *death by accident or accidental means* of a human being, or because of any expense relating thereto, or because of any expense incurred in prevention of sickness, and includes every risk pertaining to any of the enumerated risks. Health insurance does not include workmen's compensation coverages.

[*N.J.S.A.* 17B:17–4 (emphasis added).]

Significantly, insurers who are licensed to write casualty and liability lines of insurance may also be licensed to do the business of "health insurance" including the writing of accidental death benefits, upon compliance with appropriate capital requirements. Life insurers, however, are treated differently, *N.J.S.A.* 17B:17–1a, b, d, and are subject to far higher capital and surplus requirements than companies that write only health insurance. *See* *N.J.S.A.* 17B:18–35, 36; and *N.J.A.C.* 11:19–4.3 app. A (setting forth actuarial data reporting requirements for insurers that reflect the actuarial differences between life insurance and health insurance with accidental death benefits.)

The principal legislative purpose of *N.J.S.A.* 17B:27–19 is demonstrated by use of the words "without evidence of insurability" in the clause that provides a terminated employee with the right to convert to an individual policy of life insurance within the thirty-one day period. The same need to protect such an employee from rejection on the basis of uninsurability is not present in an accidental death context, where the underwriting considerations are largely unrelated to factors of age or health. Indeed, many accidental death and injury policies are marketed through vending machines or other means that similarly confirm that the underwriting concern is not for "insurability," but for the probability of an accident and its consequences.

Because of the significant differences in the nature of the two coverages, we believe that the group "life insurance" legislatively continued for thirty-one days under *N.J.S.A.* 17B:27–21 was not intended, expressly or impliedly, to embrace an accidental death benefit. The latter is a "supplementary benefit," just as are the loss of limb and disability benefits afforded under the accident and dismemberment schedule of decedent's group coverage. As the motion judge noted, the vast majority of state and federal cases that have considered the question of conversion of accidental death benefits under similar statutes have concluded that conversion rights during the thirty-one day period are limited to life insur-

ance benefits other than those provided under the accidental death and dismemberment schedule. *See, e.g., Lowes v. Pan–American Life Ins. Co.,* 355 *F.*2d 433 (8th Cir.1966); *Missig v. Prudential Ins. Co. of Am.,* 575 *F.Supp.* 1185 (E.D.Mich.1983); *Williams v. C.T. Life & Accident Ins. Co.,* 303 *F.Supp.* 1208 (D.Kan.1968), *aff'd o.b.,* 416 *F.*2d 447 (10th Cir.1969); *Droz v. Paul Revere Life Ins. Co.,* 1 *Ariz.App.* 581, 405 *P.*2d 833 (1965); *Carter v. General Am. Life Ins. Co.,* 452 *S.W.*2d 253 (Mo.Ct.App.1970); *Sanders v. Oregon Pac. States Ins. Co.,* 314 *Or.* 521, 840 *P.*2d 87 (1992); *Norman v. Aetna Life & Casualty Co.,* 551 *P.*2d 667 (Okla.App.1976); *Equitable Life Assurance Co. of the United States v. Odle,* 547 *S.W.*2d 939 (Tenn.1977); *Gudnason v. Life Ins. Co. of N. Am.,* 343 *S.E.*2d 54 (Va.1986); *see also* 45 *C.J.S. Insurance* § 433b at 166 (1993); Eric H. Miller, Annotation, *Group Insurance: Construction, Application, and Effect of Policy Provision Extending Conversion Privilege to Employee After Termination of Employment,* 32 *A.L.R.*4th 1037, 1085, § 20 (1984 & Supp.1995).

Even in *Tolstad v. Tolstad,* 527 *N.W.*2d 668, 673 (N.D.1995), in which the North Dakota Supreme Court concluded that accidental death and disability benefits could qualify as life insurance under North Dakota statutes if contained in the same policy of insurance, the court was careful to recognize the different status of such benefits as "supplemental coverage" and to distinguish cases like those cited above, which focus upon conversion rights. *See also Sanders, supra,* 840 *P.*2d at 91 (holding that accidental death benefits are "supplementary benefits").

One New Jersey case has also considered the nature of payments under an accidental loss benefits group policy rider covering death from accidental injury. In *Gottfried v. Prudential Ins. Co. of Am.,* 173 *N.J.Super.* 370, 414 *A.*2d 545 (Law Div.1977), *aff'd,* 173 *N.J.Super.* 381, 414 *A.*2d 551 (App.Div.1979), *rev'd on other grounds,* 82 *N.J.* 478, 414 *A.*2d 544 (1980), the court deemed such accidental death benefits to be "supplemental benefits" of the group policy. Neither of the reviewing courts in *Gottfried* questioned this characterization. This view is consistent with federal

and state holdings around the country and harmonizes with the exclusion of supplementary benefits in the insured's policy summary, which treats the accidental death benefits as supplementary benefits and advises that they may not be converted. This contractual preclusion of conversion rights for accidental death benefits is also consistent with the statutory limitation of the thirty-one day conversion right to "an individual policy of life insurance without disability or other supplementary benefits." *N.J.S.A.* 17B:27–19. Moreover, *N.J.S.A.* 17B:27–25 requires the filing, and approval as to form by the New Jersey Insurance Department, of group policies written in New Jersey. Plaintiff's brief and complaint indicates that the deceased had been employed in New Jersey by Federal Warehouses, and plaintiff's arguments are based upon the New Jersey Code.[1] Accordingly, we must assume that the group policy in issue was filed and approved as to form by the Department. Under *N.J.S.A.* 17B:27–25g, provisions of such a group form are subject to disapproval if "unjust, unfair, inequitable, misleading, [or] contrary to law or to the public policy of this state." There is no indication in the record that the form in question was disapproved in this State, or by any other state insurance department.

In sum, we are not persuaded that the Legislature intended to afford a mandatory conversion right for accidental death benefits under *N.J.S.A.* 17B:27–19. Consequently, the automatic continuation of coverage for death within the conversion period provided by 17B:27–21 is inapplicable, and the unambiguous policy exclusion of accidental death benefits during that period was properly enforced.

The question of whether this entire proceeding is preempted by the Employee Retirement Income Security Act of 1974 (ERISA),

---

[1] If the group policy was contracted in another jurisdiction, that state's applicable statutory provisions would have to be considered when construing the policy's limitation of conversion rights. *See, e.g., Boseman v. Connecticut Gen. Life Ins. Co.*, 301 *U.S.* 196, 57 *S.Ct.* 686, 81 *L.Ed.* 1036 (1937); *Restatement (Second) of Conflict of Law* § 192, comment h (1971).

29 *U.S.C.A.* §§ 1001–1461, need not be addressed. The issue was raised initially by the defendant, which urges in its brief that this court "not render an advisory opinion on the ERISA issues if this Court agrees that the state statute does not require conversion of accidental death benefits." We will not render an advisory opinion. We note, however, that Judge Bissell of the federal district court remanded this case to the state courts for want of federal question jurisdiction, and that in *Henkin v. Northrop Corp.,* 921 *F.*2d 864 (9th Cir.1990), the Ninth Circuit held that the question of whether the mandatory conversion provisions of California's group life statute includes accidental death benefits was not preempted by ERISA. *See also Gresham v. Massachusetts Mut. Life Ins. Co.,* 248 *N.J.Super.* 64, 69, 590 *A.*2d 241 (App.Div.1991).

Affirmed.