No. 99-459

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 155

300 Mont. 142

2 P. 3d 841

MARY GOLT,

Plaintiff and Appellant,

v.

AETNA LIFE INSURANCE COMPANY;

GENERAL AMERICAN LIFE INSURANCE COMPANY,

Defendants and Respondents.

ORIGINAL PROCEEDING: Certified Question from:

Ninth Circuit Court of Appeals

COUNSEL OF RECORD:

For Appellant:

William D. Jacobsen; Hartelius, Ferguson, Baker & Kazda, Great Falls,

Montana

Curtis Thompson (argued); Thompson, Jacobsen & Potts, Great Falls,

Montana

For Respondents:

Robert J. Sullivan (argued); Boone, Karlberg & Haddon, Missoula, Montana

Robert C. von Ohlen, Jr. (argued); Kaplan, Begy & von Ohlen,

Chicago, Illinois (for General American Life Insurance Company)

Argued: January 27, 2000

Submitted: February 15, 2000

Decided: June 13, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 On August 26, 1999 this Court agreed to address three questions certified by the Ninth Circuit Court of Appeals pursuant to Rule 44, M.R.App.P. The three questions certified by the Ninth Circuit Court of Appeals are as follows:

Questions Presented

¶ 2 1.  Does accidental death coverage, when provided either as part of a separate group accident insurance policy, or as part of a "Group Life and Accident and Health Insurance Policy," fall within Montana's statutory definition of life insurance for the purpose of determining an insured's conversion rights? *See* §§ 33-1-207, MCA (definition of life insurance), 33-20-1209, MCA (conversion rights), and 33-20-1211, MCA (effect of death during conversion period)?

¶3 2 .  Does accidental death coverage provided pursuant to a group accident insurance policy remain in effect, if the policy contains a provision granting the insured the right to a 31-day grace period in which the group policy can be converted to an individual policy, but where the insured dies before the expiration of the grace period without exercising the right to convert the policy?

¶ 4 3. If this Court determines that there is accidental death coverage in a group policy in either of the above situations, in a case where the policy provides that the insured or the employer must submit notice of claims to the insurer "or any authorized insurance agent of the Insurer," does the delivery of a notice of a claim to the insured's employer constitute notice to the insurer, on the basis that the insured's employer is an agent of the insurance company for the purpose of submitting a claim?

Factual Background

¶5 In this diversity action, Mary E. Golt (Mrs. Golt) appealed to the Ninth Circuit Court of Appeals from the final judgment entered following the grant of the motions of General American Life Insurance Company (General American) and Aetna Life Insurance Company (Aetna) (collectively Insurers) for a summary judgment in Mrs. Golt's action to recover accidental death benefits for the death of her husband, John C. Golt, III (Mr. Golt).

¶6 Mr. Golt worked as a civilian employee of the Army and Air Force Exchange Service (AAFES) at Malmstrom Air Force Base from August 21, 1978 through January 26, 1994 when he was discharged from his employment for cause. On February 25, 1994, thirty days after the termination of his employment, Mr. Golt died of carbon monoxide poisoning.

¶7 As a benefit of his employment, Mr. Golt was covered by an "accident insurance policy" issued by General American. The policy provides that if an eligible employee dies of an accidental cause while covered by the General American policy, his or her estate is eligible to receive $200,000. The policy further provides that coverage will terminate on the first premium due date after the insured ceases to be an employee. Mr. Golt ceased to be an employee on January 26, 1994, the date his employment was terminated for cause. The next premium due date following January 26, 1994 was February 1, 1994. The General American policy also provides that the group accident insurance policy can be converted to an individual policy within thirty-one days of the employee's discharge if written application is made and if the first premium is paid. If a loss is suffered, written notice of any claim must be provided to General American or its agents within twenty days, and proof of loss must be provided within ninety days. AAFES routinely transmits employee's claims to General American.

¶8 In addition, as an employee of AAFES, Mr. Golt was insured by Aetna in a policy styled as a "Group Life and Accident and Health Insurance Policy." The policy provides

that "[t]his plan will pay as a Life Insurance benefit the amount of Life Insurance in force if you die from any cause while insured." The Aetna policy provides for life insurance benefits in the amount of $32,000 for Mr. Golt. The policy also provides for "Accidental Death and Dismemberment Coverage (AD&D) in a separate portion of the group policy for "bodily injury caused by an accident and if, within 90 days after the accident, you lose, as a direct result of the injury, Your Life . . . ." The policy provides an additional accidental death benefit in the amount of $32,000 in the event of Mr. Golt's accidental death.

¶9 The Aetna policy further provides that the group *life* insurance can be converted to individual *life* insurance within thirty-one days of an employee's discharge, and that, if the employee dies during this period, benefits are payable. The Aetna policy provides that an insured must "[r]eport an illness or injury to the AAFES as soon as you can." The Aetna policy also provides that "[c]overage under this Plan" ceases when an employee is discharged. It does not provide for any conversion privilege within the description of the AD&D coverage.

¶10 On March 9, 1994, Mrs. Golt forwarded her insurance claims against General American and Aetna to Barbara Crutchfield (Crutchfield), the AAFES personnel supervisor. Crutchfield informed Mrs. Golt that her claims would be promptly transmitted to the AAFES headquarters in Texas and from there to both insurance companies.

¶11 The claims were transmitted to the AAFES headquarters and to Aetna, but not to General American. Aetna paid the $32,000 benefit due under the life insurance provisions of the policy but denied the claim for accidental death benefits on the ground that this coverage ended when Mr. Golt's employment was terminated.

¶12 On March 30, 1994, Crutchfield sent a letter to Mrs. Golt stating that AAFES had submitted Mrs. Golt's claims to General American and Aetna. She also informed Mrs. Golt that her husband was not covered under either General American's accident insurance policy or Aetna's AD&D coverage. Crutchfield did not learn until two and one-half years later that AAFES did not forward Mrs. Golt's claim to General American.

¶13 The General American accident insurance policy provides in a paragraph labeled "Notice of Claim" that written notice of claims must be sent "within 20 days after a covered loss occurs" to the National Accident Insurance Underwriters, Inc. (NAIU), "or to one of our agents." On a subsequent page under a paragraph labeled "Notice" the policy

provides that "you [the insured] or the Policyholder [AAFES] submit notice of claims" to the NAIU or to "any authorized insurance agent of the Insurer." In a letter dated December 15, 1995, the NAIU informed Mrs. Golt that no accidental death benefit would be payable on the General American accident insurance policy.

¶14 Mrs. Golt commenced this action on March 25, 1996, seeking recovery for $32,000 in accidental death benefits under the Aetna "Group Life and Accident and Health Insurance Policy," and $200,000 in accidental death benefits under the General American accident insurance policy, plus prejudgment interest. All parties moved for summary judgment. The Federal District Court concluded that there was no coverage under either policy and entered final judgment in favor of the Insurers. Mrs. Golt appealed to the Ninth Circuit Court of Appeals.

## Introduction

¶15 The issues presented arise out of a dispute regarding whether the accidental death coverages at issue are life insurance policies under Montana law for the purpose of determining Mr. Golt's conversion rights. Montana law specifically defines "life insurance" under § 33-1-208, MCA (1993), and "disability insurance" under § 33-1-207, MCA (1993). Montana law further provides that different classes of insurance may overlap. *See* § 33-1-205, MCA. Minimum conversion rights are required with regard to each type of insurance. Group life insurance policies must provide coverage to the insured for a 31-day grace period following the termination of the insured's group coverage. *See* §§ 33-20-1209 and 33-20-1211, MCA. Group disability insurance policies, on the other hand, need only extend hospital or medical insurance if application is made and the first premium is tendered. *See* § 33-22-508, MCA (1993). Thus, if accidental death coverage provided by the Insurers is construed as life insurance, Mr. Golt was insured on the date of his death. If such coverage is construed solely as disability insurance, he was not insured on the date of his death.

¶16 For the reasons set forth below, we answer each one of the three certified questions in the affirmative.

¶17 1.  Does accidental death coverage, when provided either as part of a separate group accident insurance policy, or as part of a "Group Life and Accident and Health Insurance Policy," fall within Montana's statutory definition of life insurance for the purpose of determining an insured's conversion rights? *See* §§ 33-1-207, MCA (definition of life

insurance), 33-20-1209, MCA (conversion rights), and 33-20-1211, MCA (effect of death during conversion period)?

¶18 The Aetna AD&D insurance under the group plan pays a benefit if, while insured, the insured suffers a bodily injury caused by an accident and if, within ninety days after the accident, the insured loses, as a direct result of the injury, his/her life, a hand, a foot or an eye. The General American accident insurance policy in question provides benefits if an eligible employee dies of an accidental cause while covered by the policy. The first question we address is whether the above coverages constitute life insurance or disability insurance for purposes of conversion rights.

¶19 We begin with the proposition, codified by the Montana legislature, that different classes of insurance coverage may, by definition, overlap. Section 33-1-205, MCA, provides as follows:

> **33-1-205. Definitions of kinds of insurance not mutually exclusive.** It is intended that certain insurance coverages may come within the definitions of two or more kinds of insurance as defined in this part, and the inclusion of such coverage within one definition shall not exclude it as to any other kind of insurance within the definition of which such coverage may likewise be reasonably included.

¶20 Disability insurance is defined as follows:

> **33-1-207. Disability Insurance.** Disability insurance is insurance of human beings against bodily injury, disablement, or death by accident or accidental means or the expense thereof or against disablement or expense resulting from sickness and every insurance appertaining thereto.

Section 33-1-207, MCA (1993).

¶21 Clearly, both General American and Aetna's accident insurance come within the definition of "disability insurance." The conversion rights for disability insurance are set forth in § 33-22-508, MCA (1993), as follows:

> **33-22-508. Conversion on termination of eligibility.** (1) A group disability insurance policy issued or renewed after October 1, 1981, must contain a provision that if the insurance or any portion of it on a person . . . ceases because of

termination of his employment . . . he is entitled to have issued to him by the insurer, without evidence of insurability, group coverage or an individual policy issued by the insurer . . . of hospital or medical service insurance on himself, his dependents, or family members if application for the individual policy is made and the first premium tendered to the insurer within 31 days after the termination of group coverage.

¶22 The above statute clearly provides that, upon termination of employment, a person with disability insurance coverage has the right, upon timely application, to have a policy issued for hospital or medical service. Importantly, it says nothing about a right of conversion with regard to accidental death benefits. Thus, if the accidental death coverage at issue is defined solely as disability insurance, Mr. Golt would have no statutory right to convert coverage for anything other than hospital or medical service. Mr. Golt's claim thus hinges upon whether his accidental death coverage qualifies as "life insurance" as well as "disability insurance."

¶23 Life insurance is defined as follows:

**33-1-208. Life Insurance.** Life insurance is insurance on human lives. The transaction of life insurance includes also . . . additional benefits in event of death or dismemberment by accident or accidental means . . . . Transaction of life insurance does not include workers' compensation insurance.

Section 33-1-208, MCA (1993).

¶24 Insurance coverage which qualifies as "life insurance" under the above definition is subject to a mandatory conversion under § 33-20-1209, MCA, as follows:

**33-20-1209. Conversion on termination of eligibility.** (1) The group life insurance policy shall contain a provision that if the insurance or any portion of it on a person covered under the policy ceases because of termination of employment . . . , such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance, provided application for the individual policy shall be made and the first premium paid to the insurer within 31 days after such termination . . . .

¶25 Although the above statute, as with disability insurance, requires that the insured make application for conversion of group life insurance within 31 days of termination, unlike disability insurance, there is a statutory exception in the event the insured dies during that 31-day period. Section 33-20-1211, MCA, provides as follows:

> **33-20-1211. Death pending conversion.** The group life insurance policy shall contain a provision that if a person insured under the policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with 33-20-1209 or 33-20-1210 and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

¶26 Thus, if a person with group "life insurance" dies during the 31-day conversion period without having made application, he is deemed to have a claim for the same coverage he would have had under a converted individual policy.

¶27 Mrs. Golt posits that the reason why there is no comparable provision in the disability insurance context is that an insured who incurs a major medical expense or disability during the 31-day conversion period is presumably still alive and capable of submitting a timely application for conversion, even after the covered loss. Thus, the occurrence of the covered event (disability) does not defeat the insured's ability to apply for conversion. She contrasts this with accidental death coverage wherein the occurrence of the covered event (accidental death) defeats the insured's ability to make timely application for conversion. Mrs. Golt thus concludes, "it makes complete sense for the group life insurance statutes to go further than the disability statutes, and to specifically provide that a person who dies during the conversion period is still covered regardless of whether he has submitted his application for conversion."

¶28 Aetna and General American argue that Montana statutes make a distinction between life insurance and disability insurance. That is, life insurance insures for all causes of death (excepting war, air travel, hazardous occupation and suicide within two years of the date of the policy). Disability insurance on the other hand does not insure life from all causes of death. Rather it only provides coverage in the event of death by accident. This argument has merit as far as it goes. There clearly are distinctions between life insurance and disability insurance. However, § 33-1-205, MCA, plainly provides that the definitions

of insurance are not mutually exclusive. A particular form of insurance coverage may come within the definition of more than one type of insurance. Thus, the fact that accidental death coverage comes within the definition of group "disability insurance" does not preclude it from being considered "life insurance" for conversion purposes.

¶29 Aetna contends that the reference in the definition of life insurance, under § 33-1-208, MCA (1993), to "additional benefits in event of death or dismemberment by accident or accidental means," is designed to encompass double indemnity benefits provided as a specific rider to a single life insurance policy. Aetna contends, through express inference, that the reference includes double indemnity to the exclusion of AD&D. The problem is that the statute does not specifically refer to either double indemnity or AD&D. It does, however, specifically include benefits for death by accidental means. Both policies in question provide coverage for death by "accidental means." In construing statutes, the Court's function is to " 'ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted.' " State v. Zabawa (1996), 279 Mont. 307, 313, 928 P.2d 151, 155. We note that the last sentence of the statute defining life insurance, § 33-1-208 MCA (1993), specifically states that the "[t]ransaction of life insurance does not include workers' compensation insurance." If, as Aetna suggests, the legislature meant to exclude AD&D from the definition of life insurance, it would have explicitly done so, as it did with workers' compensation insurance.

¶30 Aetna and General American cite to decisions from three other jurisdictions for the proposition that accidental death insurance is not subject to statutory provisions relating to group life insurance: Life Ins. Co. of North America v. Klingler (Tex. App. 1987), 730 S. W.2nd 32; Henkin v. Northrop Corp. (9th Cir. 1990), 921 F.2d 864 (construing California's insurance code); and Gamino v. General American Ins. (N.J. Super. Ct. App. Div. 1996), 671 A.2d 1108. We note that the courts in *Henkin* and *Klingler* did not address statutes comparable to Montana's § 33-1-205, MCA, which states that definitions of insurance coverage are not mutually exclusive. Further, California's Insurance Code provides that, "[l]ife insurance includes insurance upon the lives of persons or appertaining thereto, and the granting, purchasing, or disposing of annuities." Cal. Ins. Code Sec. 101 (West 1993). California's definition of life insurance, unlike Montana's, does not reference accidental death.

¶31 As Aetna acknowledges, the *Gamino* decision is distinguishable for the reason that the policy in question contained specific language that the AD&D could not be converted to an individual policy. *See Gamino*, 671 A.2d at 1109. Although Aetna's policy provides

that AD&D insurance ceases upon termination of employment, it does not, unlike the *Gamino* policy, prohibit conversion of AD&D.

¶32 For the above reasons, we determine that these decisions are distinguishable and are not persuasive authority. Under § 33-1-205, MCA, an insurance coverage may come within the definition of two kinds of insurance. We therefore hold that although accidental death coverage is disability insurance, it is also, for purposes of conversion rights, life insurance as defined in § 33-1-208, MCA (1993). That is, it is insurance on a human life for death by accidental means. As life insurance, accidental death coverage is subject to a 31-day conversion right upon termination of coverage pursuant to § 33-20-1209, MCA, and, in the event of death within the 31-day conversion period, it is subject to automatic conversion under § 33-20-1211, MCA.

¶33 2.  Does accidental death coverage provided pursuant to a group accident insurance policy remain in effect, if the policy contains a provision granting the insured the right to a 31-day grace period in which the group policy can be converted to an individual policy, but where the insured dies before the expiration of the grace period without exercising the right to convert the policy?

¶34 Having answered question number one in the affirmative, question number two must also be answered in the affirmative. We have determined that accidental death coverage provided under a group accident policy is, for purposes of conversion rights, life insurance under § 33-1-208, MCA (1993) (defining life insurance) and § 33-20-1209, MCA (providing conversion rights for life insurance) and § 33-20-1211, MCA (addressing effect of death during conversion period). These statutory interpretations control over any contrary provisions contained in the policies in question. Thus, accidental death coverage as provided in the General American policy remains in effect, even where the insured dies during the 31-day grace period without exercising the right to convert the policy by making application and paying the first premium.

¶35 3.  If this Court determines that there is accidental death coverage in a group policy in either of the above situations, in a case where the policy provides that the insured or the employer must submit notice of claims to the insurer "or any authorized insurance agent of the Insurer," does the delivery of a notice of a claim to the insured's employer constitute notice to the insurer, on the basis that the insured's employer is an agent of the insurance company for the purpose of submitting a claim?

¶36 Mrs. Golt argues that her tender of a claim to her deceased husband's employer

AAFES within the specified 20-day period satisfied the notice requirement of General American's Certificate of Insurance.

¶37 General American contends that Section V of the Certificate plainly informed both Mrs. Golt and her attorneys that notice of claim and proof of loss were to be sent to NAIU or one of General American's agents. Further, it contends that AAFES was the policy holder, not an agent of General American.

¶38 Finally, General American points out that although Mr. Golt died on February 25, 1994, the first notice of a claim that its agent NAIU had was the letter sent by Mrs. Golt's attorney on September 21, 1995--almost four months beyond May 26, 1995, the date that General American asserts was the absolute deadline under the Certificate by which Mrs. Golt had to submit proofs of loss concerning her husband's death. General American concludes that since the claim was not submitted to an authorized agent within the prescribed time limit, Mrs. Golt failed to satisfy a condition precedent to the right of recovery for any loss arising under the insurance policy.

¶39 Mrs. Golt argues that, in submitting her claim to AAFES, she complied with the provisions of the "Notice" which was appended to the policy:

## NOTICE

Please take notice that you are an insured under the policy . . . issued by [General American] to the Policyholder [AAFES]. . . . The Policyholder submits premiums and *you or the Policyholder submit notice of claims to the Insurer* at the office of NAIU or to any authorized agent of the Insurer. [Emphasis added.]

¶40 Mrs. Golt argues that even if she had sent her claim directly to NAIU at the only address listed in the Certificate of Insurance, the claim would not have reached NAIU because it had moved from the listed address and the post office had ceased forwarding mail to the new address before Mr. Golt died. Furthermore, although the Certificate indicates that the claim should be sent to NAIU "or to any authorized agent of the insurer," it fails to identify any acceptable "agents." Thus, given that the Certificate of Insurance listed an invalid address for NAIU and did not specify any alternative agents, Mrs. Golt, in submitting the claim to the employer AAFES, did everything she reasonably could do. Additionally, Mrs. Golt points out that the Notice provides that claims may be transmitted to General American *either by the*

*insured or through the policyholder, AAFES.*

¶41 We agree with Mrs. Golt's analysis of the substance of the Notice. Given that the Certificate of Insurance gives an invalid address for NAIU and that the Notice does not list any agents, the Policy is ambiguous as to how and to whom an insured would directly submit a claim. This ambiguity must be resolved in favor of the insured, Mrs. Golt. Furthermore, the Notice provides that claims can be submitted through the employer/ policyholder, AAFES. Here, it is undisputed that Mrs. Golt timely submitted a claim to AAFES for submission to the insurer. However, through no fault of Mrs. Golt's, AAFES did not pass the claim on to General American.

¶42 There is a split of authority on the broad question of whether an employer is an agent of the insurer in performing duties of administrating group insurance policies. *See* 1 J. & J. Appleman, Insurance Law and Practice, § 43 (Rev. 1981). General American argues that a group policyholder like AAFES is akin to an insurance broker and cites Nautilus Ins. v. First Nat. Ins., Inc. (1992), 254 Mont. 296, 299, 837 P.2d 409, 411 (citation omitted), for the proposition that an "insurance broker is usually regarded as the agent of the insured." Mrs. Golt argues that the greater weight of current authority holds that the employer is an agent of the insurer. She cites numerous decisions including Norby v. Bankers Life Co. of Des Moines, Iowa (Minn. 1975), 231 N.W.2d 665, in which the Minnesota Supreme Court held:

> Administration of group insurance policies entails some rather routine functions, such as enrolling employees through their completing applications for themselves and dependents; collecting employee contributions, if any, and remitting premiums to the insurer; terminating and reinstating insurance; and assisting in the processing of claims. . . . To the extent the employer, with the consent of the insurer, performs the functions of the insurer, it may properly be considered the insurer's agent.

*Norby, 231 N.W.2d at 669.*

¶43 In the case *sub judice*, General American's policy clearly allows claims to be submitted through the policyholder/employer, AAFES. Further, the Ninth Circuit Court of Appeals noted that the record shows that AAFES routinely transmits employees' claims to General American. Under these facts, we hold that the insured's employer, AAFES, with the express permission of the insurer, is, when accepting or processing a claim, performing a function of the insurer and is properly considered the insurer's agent.

## Conclusion

¶44 We answer each one of the three certified questions in the affirmative. First, accidental death coverage constitutes "life insurance" for purposes of conversion of benefits upon termination of group coverage. Second, §§ 33-20-1209 and 33-20-1211, MCA, control the conversion rights under an AD&D policy. Such a policy thus remains in effect, even where the insured dies during the 31-day conversion period without first exercising the right to convert through making application and paying the first premium; and, third, since the Notice specifically states that claims may be submitted by the policyholder/employer, the claim that Mrs. Golt submitted to AAFES was a timely submitted claim.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY